**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**UNITED STATES PIPE AND FOUNDRY COMPANY et al., Defendants.**

**No. CA73–H–325–S.**

United States District Court,
N. D. Alabama, S. D.

April 29, 1974.

Wm. A. Carey, Gen. Counsel, Chas. F. Wilson, Associate Gen. Counsel, EEOC, Washington, D. C., Joseph R. Terry, Jr., Act. Reg. Atty., Roger J. Martinson, Associate Reg. Atty., Gerald S. Kiel, Atty., EEOC, Atlanta Regional Litigation Center, Atlanta, Ga., for plaintiff.

John J. Coleman, Jr., Jas. P. Alexander, Bradley, Arant, Rose & White, Birmingham, Ala., Daniel L. Saltsman, Jr., Tampa, Fla., for U. S. Pipe.

John C. Falkenberry, Cooper, Mitch & Crawford, Birmingham, Ala., for Local 12014.

MEMORANDUM OPINION

HANCOCK, District Judge.

This cause came on to be heard at the April 5, 1974, motion docket upon the motion of defendant United States Pipe and Foundry Company (hereinafter sometimes called "U. S. Pipe") for summary judgment and the motion of plaintiff Equal Employment Opportunity Commission (hereinafter sometimes called the "Commission") for a stay. The motion for summary judgment is based upon the complaint, as twice amended; defendants' answers; plaintiff's answers and supplemental answers to interrogatories filed by U. S. Pipe, together with exhibits attached thereto; the affidavits filed herein; and briefs and argument of counsel. U. S. Pipe's motion is predicated upon three separate grounds: (1) the failure of the Commission to attempt to conciliate the charge upon which this action is based with its co-defendant, International Union of District 50, Allied and Technical Workers of the United States and Canada, Local 12014, affiliated with the United Steelworkers of America, AFL–CIO (hereinafter sometimes called "Local Union 12014"); (2) the failure of the Commission to furnish to U. S. Pipe notice of termination of conciliation efforts by the Commission pursuant to the Commission's Procedural Regulations, 29 C.F.R. § 1601.23; and (3) the failure of the Commission to commence this action within 180 days after the filing of the charge upon which the suit is based.

The Commission's motion to stay further proceedings is predicated upon the fact that other cases from this district have been decided on identical issues and are now on appeal. The Court has before it a complete factual record, about which there is no dispute, so that it may resolve the motions pending before it.

*The Factual Background*

On May 10, 1968, Roosevelt Jones, an employee at U. S. Pipe's Mineral Wool Plant in Birmingham, Alabama, filed a charge of employment discrimination with the Commission. In his charge, which named both U. S. Pipe and Local Union 12014 as respondents, Mr. Jones averred, *inter alia,* that he had been discriminated against "by the company, and the union, by their maintaining a racially discriminatory seniority system" (Commission answers to U. S. Pipe interrogatories, attachment 1). Mr. Jones amended his charge on February 4, 1969; however, his essential complaint remained that U. S. Pipe and Local Union 12014 maintained a seniority system which discriminated against black employees. The charge was served upon U. S. Pipe on January 2, 1969, and upon Local Union 12014 on March 11, 1969 (Commission answers to U. S. Pipe interrogatories, attachments 2 and 3).

Thereafter, the charge was investigated and the Commission rendered a decision on April 12, 1971 (Commission answers to U. S. Pipe interrogatories, attachment 5). In pertinent part, the Commission's Decision found:

"Reasonable cause exists to believe that the Respondent Employer and Respondent Labor Organization are engaged in an unlawful employment practice in violation of Title VII by maintaining a seniority system that discriminates against Charging Party and similarly situated Negroes because of their race."

"Reasonable cause exists to believe that Respondent Employer discriminates against Charging Party and similarly situated employees in violation of Title VII by maintaining a racially segregated Maintenance Department, and by refusing to consider Negroes for positions as foremen."

Except for the Commission's "reasonable cause" finding with respect to the promotion of foremen, all practices which the Commission believes violate Title VII are incidents of the collective bargaining agreement, and predecessor agreements, between U. S. Pipe and Local Union 12014.

On November 8, 1972, approximately one and a half years after the Commission Decision of April 12, 1971, a conciliator met with U. S. Pipe's labor attorney to discuss resolution of the subject case (Bell Affidavit). The union was not represented at this meeting (Bell Affidavit). Thereafter, U. S. Pipe advised the Commission, by letter dated November 10, 1972, that it declined to conciliate the Jones charge, because the issues raised in the Jones charge were "currently being litigated in federal court" (Bell Affidavit, attachment 2).

On January 16, 1973, U. S. Pipe received from Clarence Bell, District Director of the Commission's Birmingham District Office, a letter advising that: "Since the Commission has been unable to obtain voluntary compliance with Title VII of the Civil Rights Act of 1964," a Notice of Right to Sue was being issued to Mr. Jones (Bell Affidavit, attachment 4; Alexander Affidavit, Exhibit "A").

There is no dispute regarding the fact that the Commission totally failed to communicate in any fashion with Local Union 12014 about conciliation of the issues raised by the Jones charge (Bell Affidavit; Commission answers to U. S. Pipe Interrogatory No. 13).[1] Indeed, the Commission, in amending its complaint, obliquely admits that it failed to discuss conciliation with Local Union 12014.[2] It is uncontested that the Commission failed to seek to conciliate the issues with the union. Neither the Bell Affidavit, submitted by the Commission in opposition to U. S. Pipe's Motion for Summary Judgment, nor any representation of Commission counsel in argument, contradict the fact that no communication, of any sort, was had with Local Union 12014 with respect to conciliation of the Roosevelt Jones charge.[3]

On April 4, 1972, the Commission commenced this action against both U. S. Pipe and Local Union 12014. In paragraphs 8, 9, 10 and 11 of its complaint, the Commission avers that U. S. Pipe engages in a number of practices which allegedly discriminate against blacks in violation of Title VII. In paragraph 14 of its complaint, the Commission alleges:

"The collective bargaining agreements aforesaid contain, and have contained, provisions that aid and abet and have aided and abetted defendant company in discriminatory acts and practices described in paragraphs 8, 9, 10 and 11 above."

### The Conciliation Issue

The conciliation question, raised by U. S. Pipe's Motion for Summary Judgment, is one of first impression in this court. The court is called upon to determine, on the basis of the undisputed facts recited above, whether the Commission may bring this lawsuit.[4]

---

1. Affidavits filed in connection with a motion to dismiss filed by Local Union 12014 also support this finding.

2. In an amendment to the complaint, served on June 8, 1973, the Commission avers in paragraph 7(e): "The informal endeavors of conference, conciliation and persuasion with Defendant Company were in fact the informal endeavors with Defendant Union inasmuch as the Defendant Union is, and has been an aider and abetter in the discriminatory acts and practices of the Defendant Company." And, in its Supplemental Answers to U.S. Pipe's Interrogatory No. 13, in which the Commission was asked to describe its efforts to conciliate the case with the union, the Commission responded: "The informal endeavors of conference, concilia-

tion and persuasion with Defendant Company were, in fact, the informal endeavors with Defendant Union inasmuch as the Defendant Union is, and has been, aware of discriminatory practices of Defendant Company."

3. Shortly after the Commission Decision in April, 1971, counsel for the union received a letter advising him that a conciliator would contact him (Vance Affidavit). The April letter, the record establishes, is the only contact which the Commission had with Local Union 12014 after the decision until it sent its suit letter on January 15, 1973.

4. The Commission contends that the court has decided the conciliation issue when it overruled Local Union 12014's amended Motion to Dismiss and that the question is now

The statutory scheme in broad outline contemplates that, first, a charge is filed with the Commission; second, the Commission then investigates the issues raised by the charge and makes a determination of "reasonable cause" with respect to violation of the Act. Then, the Commission attempts to conciliate the dispute, if "reasonable cause" has been found. Finally, failing conciliation, the Commission may litigate the dispute.

Prior to 1972, only the charging party was permitted to institute a civil action (except in "pattern and practice" cases brought by the Attorney General). In 1972, Congress amended Title VII in several respects and granted to the Commission the right to bring suit in order to enforce Title VII.

The court initially observes that, under Title VII prior to its amendment in 1972, conciliation was intended to be the heart of the enforcement process. The government, except in "pattern and practice" cases, did not have the power to enforce the Act outside the conciliation mechanism. In Dent v. St. Louis-San Francisco Ry. Co., 406 F.2d 399, 402 (5th Cir. 1969), cert. denied, Hyler v. Reynolds Metals Co., 403 U.S. 912, 91 S. Ct. 2219, 29 L.Ed.2d 689 (1971), decided under the original Act, the Court commented:

"Thus it is quite apparent that the basic philosophy of these statutory provisions [Title VII] is that voluntary compliance is preferable to court action and that efforts should be made to resolve these employment rights by conciliation both before and after court action."

Despite the pervasive statutory scheme favoring conciliation, the Court in *Dent* determined that conciliation was not a jurisdictional prerequisite to an action brought by a private plaintiff. The Court's reasoning, which is widely accepted, is that the private plaintiff may not be penalized on account of the inaction of the Commission.[5] But the Court's solicitude for the private plaintiff who is required to rely upon the Commission, does not reflect its rejection of the statutory scheme of conciliation. In Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970), the Court held that the private plaintiff, in framing a Title VII complaint, was not bound by the express language of the charge of discrimination. Rather, the Court found that the private plaintiff could raise any matter within the ambit of the Commission's investigation growing from the charge. In so holding, Judge Goldberg commented: "A *less* exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance." *Id.* at 467. Under the Act before amendment, conciliation remained an indispensable part of the statutory scheme even though its absence did not foreclose the private plaintiff from litigation.

In 1972, Congress amended Title VII to permit the Commission to sue in its

---

moot. The Commission is incorrect. The union's amended motion was supported by affidavits filed within ten days of the August 3, 1973, motion docket. At that time, the court overruled the motion since the Commission did not have an opportunity to submit evidence on its behalf. Federal Rules of Civil Procedure, Rule 56(c). The court did not consider the issue closed and so informed counsel from the bench. The court now has the benefit of an affidavit submitted by the Commission and Commission an-

swers to U. S. Pipe interrogatories, both of which bear upon the circumstances of conciliation efforts.

5. The Fifth Circuit noted: "The dismissal of these cases deprived the aggrieved employee of that right of action, not because of some failure on his part to comply with the requirements of the Title, but for the Commission's failure to conciliate—a failure that was and will always be beyond the control of the aggrieved party." 406 F.2d 399, 403.

own name.[6] Although the Commission is not required to rely *exclusively* upon its conciliation process to enforce the Act, it is evident that Congress clearly did not intend to abrogate the role of conciliation in resolving employment discrimination disputes. Section 706(f)(1), as amended in 1972, explicitly provides that:

"If within thirty days after a charge is filed with the Commission . . . the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring [an] action against any respondent . . . ."

The statute expressly sets out two steps which must be negotiated prior to ·the Commission's institution of a suit. The charge must be filed and the Commission must have failed to obtain an acceptable conciliation agreement.

 The Conference Report, which accompanied the House's version of the 1972 Amendments, provided:

"The conferees contemplate that the Commission will continue to make every effort to conciliate as is required by existing law. Only if conciliation proves to be impossible do we expect the Commission to bring action in federal district court to seek enforcement." [7]

Thus, the court believes that conciliation continues to form an integral part of the statutory scheme to enforce Title VII's prohibitions against employment discrimination. The Commission apparently concurs, since its Procedural Regulations, last amended on June 25, 1973, after the 1972 statutory revisions, provide in pertinent part:

"In conciliating a case in which a determination of reasonable cause has been made, the Commission shall attempt to achieve a just resolution and to obtain assurances that the respon-

dent will eliminate the unlawful employment practice and take affirmative action . . . ." [8]

This court has previously concluded that the fact of a conciliation attempt must be averred as a predicate for subject matter jurisdiction when the Commission seeks to commence an action. In EEOC v. Griffin Wheel Co., 360 F. Supp. 424, 426 (N.D.Ala.1973), this court ruled:

"The inability of the Commission to secure from defendant a conciliation agreement acceptable to the Commission is a prerequisite established by Section 706(f)(1) which must be satisfied *before* the Commission can file a civil action. In amending Title VII in 1972 to allow the Commission to maintain suit on its own behalf, Congress emphasized the duty of the Commission to make a good faith effort to secure voluntary compliance through conciliation prior to bringing suit; and the fulfillment of this duty is necessary before a district court can entertain suit by the Commission. Being jurisdictional in nature, the complaint must at least allege in the statutory language that 'the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission.' While the merits of any conciliation effort are not subject to review by this Court in an action such as this, the fact of whether or not the Commission did engage in a good faith effort at conciliation which proved unsuccessful is a matter for this Court to examine."

Under the *Griffin Wheel* rationale, a threshold examination of the Commission's attempt to effect conciliation is warranted.

The view that an allegation of an unsuccessful effort to obtain conciliation is necessary to state subject matter juris-

---

6. The history of enactment is reflected in Sape and Hart "Title VII Reconsidered: The Equal Employment Opportunity Act of 1972," 40 Geo.Wash.L.Rev. 824 (1972).

7. 118 Cong.Rec.H. 1861 (March 8, 1972).

8. 29 C.F.R. § 1601.22.

diction under F.R.Civ.P. 8(a) is supported in several decisions. For example, in EEOC v. Wagner Electric Corp., 7 FEP Cases 98, 100 (E.D.Mo.1973), the court, citing *Griffin Wheel* with approval, concluded:

"The *existence* of adequate service, of investigation, of a determination, of probable cause, and of adequate good faith conciliation efforts by plaintiff are relevant to a jurisdictional determination that the EEOC was unable to secure an acceptable conciliation agreement."

Likewise, in EEOC v. Western Electric Co., Inc., 364 F.Supp. 188, 189 (D.Md. 1973), the district judge concluded: ". . . [I]t is the Court's opinion that the statutory scheme set forth is jurisdictional in nature and requires the Commission to allege satisfaction of each condition precedent." See also, EEOC v. Container Corp. of America, 352 F.Supp. 262 (M.D.Fla.1972); EEOC v. Standard Forge & Axle Co., 6 FEP Cases 554 (M.D.Ala.1973); *cf.* Brennan v. Weis Markets, 5 FEP Cases 850 (M.D.Pa.1973). (Age Discrimination in Employment Act).

Other courts have concluded that the statutory requirements of unsuccessful conciliation efforts are not jurisdictional. See, e. g., EEOC v. Pick-Memphis Corp., 5 FEP Cases 1310 (W.D.Tenn.1973); EEOC v. Bartenders Local 41, 369 F. Supp. 827, (C.D.Cal.1973); EEOC v. Mobil Oil Corp., 362 F.Supp. 786 (W.D. Mo.1973). However, in cases where trial courts have concluded that an allegation of unsuccessful conciliation is unnecessary to support subject matter jurisdiction, they generally agree that an unsuccessful effort to achieve conciliation is necessary to the statement of a cause of action. For example, in EEOC v. McLean Trucking Co., 7 FEP Cases 302, 303 (W.D.Tenn.1974), the court held:

"[T]he Court finds that the E.E.O.C. has not attempted to conciliate, investigate, nor to negotiate a settlement on any of the charges filed with it

concerning defendant McLean except the Brown charge. The E.E.O.C., accordingly, has failed to follow its own regulations and the statute giving it authority in employment discrimination matters in these respects."

The court cited failure to conciliate as an additional reason for affirming defendant's summary judgment previously entered. For another example, see EEOC v. Westvaco Corp., 372 F.Supp. 985 (D.Md.1974), where the court commented:

"Accordingly, the Court finds as facts beyond dispute that the EEOC did not make a proper determination of reasonable cause with respect to the charges and did not provide an opportunity for conciliation before suit was filed."

On the basis of these facts, the *Westvaco* court reasoned that the Commission simply failed to state a cause of action under Title VII, as amended, and dismissed the case.

Finally, regarding the scope of a complaint filed by the Commission, it has been noted that the litigatable issues in a Commission lawsuit are limited to those issues that have been the subject of conciliation efforts. *See* EEOC v. duPont Co., 373 F.Supp. 1321 (D.Del. 1974), wherein the court observed:

"Congress, committed as it was to voluntary compliance, could not have intended that the Commission could attempt conciliation on one set of issues and, having failed, litigate a different set."

This court must, therefore, examine the facts pertinent to the existence of conciliatory efforts. On this record, it is evident, indeed not even contested, that the Commission failed to contact Local Union 12014 with respect to conciliation. Likewise, it is also undisputed that the Commission sought to conciliate the case with U. S. Pipe but U. S. Pipe declined to do so on the ground that it believed that matters raised by the Jones charge were subject of pending litigation in this court. The issue is

whether, in view of the Commission's failure to conciliate with the union, it has been "unable" to obtain a conciliation agreement acceptable to the Commission.

First, the court cannot accept the Commission's contention that conciliation with U. S. Pipe was tantamount to conciliation with Local Union 12014. The Commission makes no showing, or contention, that the relationship between U. S. Pipe and Local Union 12014 is anything other than the typical relationship between a union and an employer. Certainly this court is not prepared to hold that the interests of a union and an employer are, as a matter of law, so intertwined as to be substantially identical. A concept of "constructive" conciliation does not exist.

■ The court is convinced that the statutory scheme contemplates the parties actually conciliating with each other. Any holding which would be in derogation of the important conciliation role of the Commission is neither authorized, nor suggested, by the statute. The Commission's contact with U. S. Pipe simply cannot suffice as contact with Local Union 12014,[9] and the record is otherwise clear that the Commission failed to make any effort whatsoever to conciliate with Local Union 12014. The court therefore holds that the failure to conciliate with one respondent, the union, is fatal to the subject matter jurisdiction of this court.

In reaching its conclusion, the court does not tread upon the administrative expertise of the Commission. The court makes no judgment as to whether any proposal, or any position taken by the Commission, would constitute the basis for an "acceptable" conciliation agreement. The court's holding is simply that in order for the Commission to

bring suit under Section 706(f)(1), it *must at least make a bona fide effort to conciliate a charge with all respondents before bringing suit.*

This holding is predicated entirely on a statutory basis. However, the Commission's failure to communicate with the union is especially telling in the factual circumstances of this case. It is undisputed that charging party charged both the union and the employer in 1968; the gravamen of his charge, as well as the subsequent Commission Decision, lies in a departmental seniority system which is, and has been, embodied in collective bargaining agreements between U. S. Pipe and Local Union 12014. The real dispute in this case, fairly considered on the basis of the complaint and the Commission's answers to U. S. Pipe interrogatories, focuses around a departmental seniority system. To be sure, there are other issues in the lawsuit. The Commission has averred that U. S. Pipe fails to promote blacks to supervisory positions and that Local Union 12014 does not adequately represent black employees in the contractually-established grievance process. However, the record shows that this case is essentially one that arises from departmental seniority and meaningful conciliation would necessarily involve both the union and the employer.

The Commission makes several arguments in opposition to U. S. Pipe's Motion for Summary Judgment based upon the failure to conciliate, which the court has carefully considered. First, the Commission urges that the presence or absence of the union as a party does not deprive the court of jurisdiction; it asserts, further, that the court may retain the union as a "desirable" party.

The Commission points out that a number of courts, in actions brought by

9. The court, of course, is not attempting to speculate what would have happened had the Commission contacted the union. It may well be that the union would have adopted U. S. Pipe's position and declined to conciliate on the ground of litigation to which it also was a party. On the other hand, the union may have attempted to persuade U. S. Pipe that the joint interests were best served by conciliating the Jones charge. Such conjecture is not in issue. The point is that the Commission simply failed to communicate with the union with respect to conciliation.

private plaintiffs, have joined unions as parties although no charges had been filed against them with the Commission. See, *e. g.*, Reyes v. Missouri-Kansas-Texas R.R. Co., 53 F.R.D. 293 (D.C.Kan. 1971). Rather than support the Commission's position, these cases—all involving private plaintiffs—merely attest to the necessity of joining bargaining agents when bargaining rights are intimately involved in an employment discrimination case. The court views private actions as having only limited utility in determining issues dealing with the Commission's right to sue.

The Commission's argument that Local Union 12014 is not an "indispensable" party under F.R.Civ.P. Rule 19 is relevant only if the court accepts the premise that conciliation is not jurisdictional. However, in passing, it should be observed that the result would not be different in this case even if conciliation were not jurisdictional. If the court were to conclude that the Commission could not state a claim against the union, on the basis of its failure to conciliate with it, there is little else to litigate under this complaint. This case, the court emphasizes, involves bargained-for seniority rights. In its interrogatories, U. S. Pipe asked the Commission to " . . . describe each and every position which you believe will be altered by the remedy which you are seeking in this proceeding." The Commission responded: "Article 2 (Seniority) and all other provisions which will be affected by any change in this provision, including, but not necessarily limited to, Articles 3, 4, 5, 7, 8, 9, 12, 16, 18 and 19." Since the agreement in question contains only 24 articles, it is clear that the issues involved are totally entwined in the collective bargaining agreement.

■ Applying F.R.Civ.P. Rule 19(b) criteria, the union is plainly indispensable. The record leads compellingly to the conclusion that the union is closely involved in the matters of which plaintiff complains as a party to the bargaining agreement. It is not enough to say that this court can render an injunction which will modify the agreement. In the event that this court were to determine that the bargaining agreement between Local Union 12014 and U. S. Pipe required judicial amendment to effect compliance with Title VII, it would be reluctant to do so without hearing from the union which represents, pursuant to statutory obligation, the employees affected.

The Commission has referred the court to a number of cases which affirm its power to modify collective bargaining agreements in granting relief in Title VII cases.[10] This court is well aware of its power to order sweeping relief under Title VII in situations where it is warranted. But the fact that the agreement can be altered is only a very limited aspect of the analysis attendant to a F.R. Civ.P. Rule 19(b) determination.

The Commission additionally seeks to escape the consequence of its failure to attempt conciliation with Local Union 12014 by urging that defendants have available to them the 60-day stay provision set out in 42 U.S.C. § 2000e–(5)(f)(1) and are therefore not prejudiced by the absence of conciliation. Apart from the fact that the court is holding that good faith conciliation efforts—at least to the degree of communicating with all respondents—must precede the filing of a Commission lawsuit, and consequently, an opportunity for conciliation subsequent to filing is inadequate, the court notes that the position now taken by the Commission (that a defendant may seek a 60-day stay) is inconsistent with a Commission position taken earlier in this court in EEOC v. Louisville & Nashville R.R. Co., 368 F. Supp. 633 (N.D.Ala.1974). In that case, a defendant sought to invoke the 60-day stay provision and the Commis-

---

10. See Vogler v. McCarty, Inc., 451 F.2d 1236 (5th Cir. 1971); English v. Seaboard Coast Line R.R. Co., 465 F.2d 43 (5th Cir. 1972). Interestingly, both cases from this Circuit which the Commission relies upon, in seeking to persuade the court that the union is not indispensable, involved both unions and employers.

sion vigorously resisted, asserting that the 60-day* stay provision authorized only the Commission itself to seek a 60-day stay. This court did not accept the Commission's position and directed a 60-day stay for further conciliation efforts. As the record in *Louisville & Nashville* reflects, the court-ordered stay was meaningless because the Commission's General Counsel's office failed to surrender the case to the Office of Compliance and no fruitful conciliation occurred during the stay. While this prior history would compel rejection of the argument now made by the Commission that the 60-day stay, available to defendants, offers a meaningful opportunity for conciliation, it is not necessary to rely upon such history, for, as indicated, the court holds that an unsuccessful conciliation attempt must occur prior to the commencement of a Commission lawsuit.

### Notice Under Section 1601.23

The Commission's Procedural Regulations provide:

"Should a respondent fail or refuse to confer with the Commission or its representatives, or fail or refuse to make a good faith effort to resolve any dispute, the Commission may terminate its efforts to conciliate the dispute. In such event, the respondent shall be notified promptly in writing, that such efforts have been unsuccessful and will not be resumed except upon respondent's written request within the time specified in such notice." [11]

The defendants received only one notice —the Right to Sue Notice dated January 15, 1973, issued pursuant to 29 C.F.R. § 1601.25. The January 15 letter merely recites that the Commission has been unable to conciliate and that a "suit letter" was being sent to charging party. There was no notice of any kind that the respondents had a specified period of time within which to alter their position or face litigation. In EEOC v. Louisville & Nashville R.R. Co., *supra*, 638, this court concluded:

" . . . § 1601.23 confers upon a respondent an important procedural right. This right is the right to be notified that the conciliation stage of a Commission proceeding is about to end unless the respondent acts promptly. Thus this notice allows the respondent one last chance to alter its position with regard to the issues being discussed during conciliation with the knowledge that the statutory scheme provides for litigation as the next step."

These comments are equally appropriate here. See also, EEOC v. Firestone Tire & Rubber Co., 366 F.Supp. 273 (D.Md. 1973); EEOC v. Westvaco Corp., 372 F.Supp. 985 (D.Md.1974).

With respect to the failure to send a § 1601.23 notice, the Commission advances two arguments. First, it argues that § 1601.23, by its terms, applies only to non-cooperative and recalcitrant respondents. Second, the Commission claims that its failure to act is not "substantial and in any event, does not go to jurisdiction."

■ With respect to the argument that Section 1601.23 applies solely to recalcitrant respondents, this court has previously observed that the Commission's interpretation of its regulation would confer a greater benefit upon the non-cooperative respondent than the respondent who is anxious to meet at the conciliation table and resolve the controversy. The Commission's interpretation of Section 1601.23 offends principles of fundamental fairness and would do little to forward the goal of conciliation; furthermore, no such distinction may be gleaned from the uncomplicated language of the regulation itself.

■ Even assuming, however, that the Commission's interpretation of Section 1601.23 is correct, the undisputed

11. 29 C.F.R. § 1601.23.

facts in this case suggest that U. S. Pipe falls within the ambit of the regulation, even as the Commission interprets it. The facts establish that the Commission met with an officer of U. S. Pipe and two days later, U. S. Pipe notified the Commission that it was unwilling to conciliate the case because it was litigating the same issue in a private lawsuit. Thus, U. S. Pipe failed to conciliate with the Commission and its refusal should have triggered notice under Section 1601.23. Accordingly, even if the court were to accept the Commission's interpretation that Section 1601.23 has limited application, it would still be obligated to hold that the Commission has failed to conform to the requirement of its own regulations. Moreover, as to the respondent union named in the charge, there is no way to determine whether it was non-cooperative or recalcitrant toward conciliation for there was simply no effort by the Commission to conciliate with the union.

■ The Commission's second argument on this issue may be reduced to the contention that the Commission need not comply with its own procedural regulations in employment discrimination cases since there are only two statutory preconditions to suit—the filing of a charge and an unsuccessful attempt to obtain a conciliation agreement. The Commission further argues that failures on its part to comply with regulation do not constitute a defense unless defendants demonstrate prejudice by reason of the Commission's failure to comply. The court notes that the Commission's regulations set forth a scheme within which charges of employment discrimination may be investigated and, hopefully, resolved by conciliation. Section 1601.23 is a part of the administrative scheme and there is nothing in the regulations that suggests the Commission, in its discretion, may elect not to apply them. The Commission's regulations should be given full force and effect. See, EEOC v. Westvaco Corp., 372 F.Supp. 985 (D.Md.1974).

■ As to the question of prejudice, the court cannot accept the Commission's bald assertion that defendants have not been prejudiced in this proceeding. On the undisputed facts in this case, it is clear that Local Union 12014 was not contacted with respect to conciliation and that U. S. Pipe failed to receive a "last chance" notice, which the Commission was obligated to transmit. Had there been compliance with both the statute and the regulations, this dispute might not have reached this court. Both the statute and the Commission regulations provide avenues to escape litigation. If defendants do not have the advantage of the option to take these avenues, then this court believes they have been prejudiced. Where an agency confers a benefit by its regulations to a party in proceedings before it, it should not be permitted capriciously to deprive a party of that benefit. This case falls within this general rule, and the court will not permit the Commission to ignore procedures which may obviate the necessity for litigation.[12]

Title VII, as amended, requires the Commission to attempt to conciliate charges of employment discrimination. The agency has set out, in its regulations, the mechanics of the conciliation process. That process includes notice under Section 1601.23. Where, as here, that notice was not sent, it is clear that the Commission has not met its obligations. Compliance with Section 1601.25 is not compliance with Section 1601.23. Accordingly, dismissal of this action is justified on the independent ground that

---

12. See also, "Violations by Agencies of Their Own Regulations," 87 Harv.L.Rev. 629 (1974).

**248**

the Commission failed to furnish U. S. Pipe with notice under Section 1601.23.

### The Commission Failed to File This Lawsuit Within 180 Days of the Charge

■ The evidence establishes that the only charge which serves as a predicate for this lawsuit—that of Roosevelt Jones —was filed on May 10, 1968. The case proceeded through Commission internal procedures until this action was commenced on April 4, 1973. The Commission failed to commence this action within 180 days of the filing of the charges upon which this suit is based.[13] Therefore, based upon the authority in this district, it is the opinion of the court that the motion for summary judgment is due to be granted on this separate and independent ground and this action is due to be dismissed. EEOC v. Louisville & Nashville R.R. Co., *supra;* EEOC v. Union Oil Co. of California, 369 F. Supp. 579 (N.D.Ala.1974); EEOC v. Griffin Wheel Co., 360 F.Supp. 424 (N. D.Ala.1973); EEOC v. Guaranty Sav. & Loan Ass'n, 369 F.Supp. 36 (N.D.Ala. 1973). See also, EEOC v. Kimberly Clark Corp., 7 FEP Cases 666 (W.D. Tenn.1974); EEOC v. Cleveland Mills Co., 364 F.Supp. 1235 (W.D.N.C.1973).[14] But see, *e. g.,* EEOC v. Mobil Oil Corp. 362 F.Supp. 786 (W.D.Mo.1973).

### The Commission's Motion to Stay

■ The Commission predicates its motion to stay further proceedings in this case on its unresolved appeals of the cases referred to in footnote 14, supra. The decision this day reached in this case that good faith conciliation efforts —at least to the degree of communicating with all respondents—must precede the filing of a Commission lawsuit is a major issue which will not be resolved

by the appellate court's dispositions of any of those cases. Accordingly, the motion is due to be overruled.

### Concluding Observations

Finally, the court makes several observations with respect to Commission litigation in this court, as well as this case in particular. First, the court does not believe that requiring the Commission to adhere to the statute, or to its own regulations, governing the conciliation process, constitutes a stumbling block to vigorous enforcement of the prohibitions of Title VII of the Civil Rights Act of 1964, as amended. The court is firmly committed to the enforcement of Title VII as well as the national policy attendant thereto of equal employment opportunity. The steps which this court has concluded are required to be taken by the Commission prior to the commencement of a lawsuit will not adversely affect the Commission's important role under Title VII. To the contrary, such statutory requirements, the court strongly believes, operate to the advantage of charging parties under Title VII and will facilitate enforcement of the Act. A charge of employment discrimination should be promptly investigated and expeditiously processed in accordance with the unambiguous Congressional intent. Furthermore, before the Commission litigates, it must make a good faith effort to discharge its statutory function as a conciliator. To be sure, nothing the court says herein is binding upon the private plaintiff; other considerations apply to the private litigant; and nothing the Commission does, or fails to do, may deprive the private plaintiff of his right to contest, *de novo,* alleged discriminatory employment practices in this court.

However, as this court continues to emphasize, the Commission is in a dif-

---

13. Further, this instant suit was filed more than 180 days after the effective date of the 1972 amendments to the Civil Rights Act of 1964.

14. All cases, except *Union Oil,* are currently being appealed by the Commission.

ferent posture from the private plaintiff. Unlike the private plaintiff, there is nothing which suggests that the Commission need not comply with its own rules.[15] All parties, including the Commission, stand to benefit from serious conciliation efforts.

The court is aware, of course, of the effect of its summary judgment upon the employees for whom the Commission seeks redress. However, that impact is mitigated since the record in this case makes clear that there is a serious question as to a duplication of effort on the part of the private plaintiff and the Commission. In Cotton v. United States Pipe and .Foundry Company, Civil Action No. 71–1181, presently pending in this district, many, if not all, of the issues raised in the Commission's action are the subject of class action litigation. In *Cotton*, the same defendants are defending the same seniority system that is the subject of the Commission's attack here. Although this court is entering summary judgment in favor of these defendants in this case, it does so aware that the questions raised by the Commission will not go unresolved.

In summary, the court is of the opinion that the Commission failed to attempt conciliation with the respondent union, as it is required to do; failed to issue the appropriate notice under Section 1601.23, as it is required to do by its regulations; and failed to bring this action within the time period set out in 42 U.S.C. § 2000e–5(f)(1). Accordingly, an order granting U. S. Pipe's Motion for Summary Judgment, for each of the reasons enumerated herein, and dismissing this action will be entered. The motion for stay will be overruled since the court's holdings with respect to conciliation are not presently the subject of any appeal.

---

15. In *Dent, supra* in text, the Court of Appeals observed: "The Court does not have before it, and is not now passing upon, a situation, if there were to be one, in which the Commission as a matter of routine simply abandons all efforts at actual conciliation."

*Id.* 406 F.2d at page 403. This case presents the situation where, in effect, it can be fairly concluded that the Commission abandoned any serious intent to conciliate the case.