EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,

v.

HICKEY–MITCHELL COMPANY, Defendant-Appellee.

No. 74–1373.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1974.

Decided Dec. 11, 1974.

Josephine A. Trevathan, Atty., E.E.O.C., Washington, D. C., for plaintiff-appellant.

F. Douglas O'Leary, Moser, Marsalek, Carptenter, Cleary, Jaeckel, Keaney & Brown, St. Louis, Mo., for defendant-appellee.

Before LAY and HEANEY, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

The Equal Employment Opportunity Commission (EEOC) appeals from an order of the district court[1] entered May 9, 1974 dismissing without prejudice its action against the Hickey-Mitchell Company (hereinafter the Employer) for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Supp. II, 1972), amending 42 U.S.C. § 2000e (1970).[2] After an evidentiary hearing the court found that the Commission had failed to follow its own conciliation procedures and, consequently, had failed to prove satisfaction of the statutory condition to the maintenance of this action— that it had been "unable to secure from the respondent a conciliation agreement acceptable to the Commission." 42 U.S.C. § 2000e–5(f)(1) (Supp. II, 1972).[3]

---

* Talbot Smith, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. The Hon. John F. NANGLE, United States District Judge, Eastern District of Missouri.

2. A previous ruling of the court is found in EEOC v. Hickey-Mitchell Co., 372 F.Supp. 1117 (E.D.Mo.1973). There the court refused to dismiss the complaint on the ground that it had not been filed within 180 days of the filing of the charge, holding that the Act did not so require. *Accord,* EEOC v. Cleveland Mills Co., 502 F.2d 153 (4th Cir. 1974). It did, however, dismiss Count II of the complaint (which alleged sex discrimination) as not within the proper scope of an investigation of the original charge (which alleged racial discrimination). The court also granted a

protective order in favor of the Employer, delaying discovery until the court resolved "the jurisdictional issue of whether the plaintiff was unable to secure an acceptable conciliation agreement." 372 F.Supp. at 1123.

In view of our resolution of the issues herein, we need not reach and we express no opinion on the 180 day issue.

3. 42 U.S.C. § 2000e–5 (Supp. II, 1972) provides in pertinent part:

(a) * * *

The Commission is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful employment practice as set forth in section 2000e–2 or 2000e–3 of this title.

(b) * * *

Specifically, the court found the Commission had not mailed the notice required by 29 C.F.R. § 1601.23 (1974), which provides:

> Should a respondent fail or refuse to confer with the Commission or its representative, or fail or refuse to make a good faith effort to resolve any dispute, the Commission may terminate its efforts to conciliate the dispute. In such event, the respondent shall be notified promptly, in writing, that such efforts have been unsuccessful and will not be resumed except upon the respondent's written request within the time specified in such notice.

Before us the Commission does not dispute that the regulation was not followed, but urges that in the circumstances of this case, 1) compliance with the regulation was not required, and, alternately, 2) noncompliance was not prejudicial to the Employer. Such circumstances, as found by the trial court, we here summarize. On March 15, 1972 Margo Owens filed a charge with the Commission alleging that because of her race the Employer paid her less than a white employee doing the same work. The Commission's investigation of these charges in August, 1972 ultimately resulted in the Commission's determination on November 30, 1972 that reasonable cause existed to believe that the Employer had engaged in an unlawful employment practice. A copy of this determination, including a "Notice of Conciliation Process" and an invitation to join with the Commission "in a collective effort toward a just resolution of this matter," was mailed to the Employer December 6, 1972.[4] In January, 1973 the Employer's attorney, F. Douglas O'Leary, spoke by telephone with James Helm, a Commission official, concerning conciliation of the Owens charge. Mr. O'Leary indicated little willingness to conciliate the charge. At Mr. Helm's request, Mr. O'Leary wrote Mr. Helm a letter dated January 12, 1973 wherein Mr. O'Leary declined to engage in conciliation with the Commission.[5] No further

> Whenever a charge is filed by or on behalf of a person claiming to be aggrieved * * * alleging that an employer * * has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge * * * on such employer * * * (hereinafter referred to as the "respondent") within ten days, and shall make an investigation thereof. * * If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. * * *
>
> * * * * * *
>
> (f) * * *
>
> (1) If within thirty days after a charge is filed with the Commission * * * the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent * * * named in the charge. * * *

4. The Notice of Conciliation Process states in part:

> [A] Commission representative will contact each party to ascertain their willingness to engage in settlement discussions and, if the parties are willing, join with them in a collective effort to arrive at a just settlement. Should the Respondent decline to enter into settlement discussions, or should the Commission representative for any reason be unable to secure a settlement acceptable to the District Director, he shall so inform the parties in writing and advise them at that time of the court enforcement alternatives available to the Charging Party and the Commission.

5. The body of the letter reads:

> This will confirm our telephone conversation. My client, Hickey-Mitchell Company, sees no purpose in attempting any conciliation for the reason that we feel our handling of this matter was entirely correct and the so-called finding of the District Director is without any basis whatever. Further, even if this were a matter that might be subject to conciliation, it appears to us that the attitude and methods of the local representatives of the Commission are such that no employer would receive fair treatment.
>
> We would be delighted to have some procedural method available within the Commission to appeal this decision, but I understand there is no such procedure available. If the Commission or any other person wants to take further action, we would assume that such action will take place in a forum where there would be a fair and impartial hearing by persons who do not have a preconceived result in mind while considering the evidence.

contact occurred between the parties until this action was instituted May 9, 1973.

 We are thus squarely confronted with the issue of whether the Commission's failure to give the notice required by 29 C.F.R. § 1601.23 (1974), that the Commission considers the conciliation efforts unsuccessful and intends to terminate them, should bar the prosecution of the Commission's civil action under 42 U.S.C. § 2000e–5(f)(1) (Supp. II, 1972). We are not without guidance in this area; two district courts in addition to the court below have considered the issue and resolved it against the Commission. EEOC v. United States Pipe & Foundry Co., 375 F.Supp. 237, 246–248 (N.D.Ala.1974); EEOC v. Louisville & Nashville R.R., 368 F.Supp. 633, 638–639 (N.D.Ala.1974); EEOC v. Firestone Tire & Rubber Co., 366 F.Supp. 273 (D.Md. 1973). We may reject out of hand the Commission's contention that the regulation is not applicable to the situation before us. The argument that the limited purpose of the regulation is to "make certain that a respondent's failure to engage in conciliation is not the result of inadvertence or neglect" ignores the fact that the regulation applies in terms to a respondent's "fail[ure] *or refus[al]*" to conciliate.[6] That the Employer intentionally and knowingly declined to conciliate does not take the case out of the ambit of the regulation.

More serious, however, is the Commission's claim that the January 12 letter conclusively demonstrates its inability to secure a conciliation agreement within the meaning of 42 U.S.C. § 2000e–5(f)(1) (Supp. II, 1972),[7] and that the failure to give the § 1601.23 notice is at most a technical error which did not prejudice the Employer. Resolution of this issue requires a brief examination of the purpose of the regulation and the function of conciliation, generally, in the enforcement scheme of Title VII.

As originally enacted Title VII did not empower the Commission to sue employers to enforce the Act.[8] Rather, "[c]ooperation and voluntary compliance were selected as the preferred means for achieving" equality of employment opportunities.[9] Voluntary compliance proved elusive, however, as more than half of the Commission's conciliation efforts were deemed unsuccessful.[10] Consequently, Congress enacted the Equal Employment Opportunity Act of 1972 which amended Title VII to permit Commission suits.[11] The statutory mandate that the Commission attempt conciliation was not abandoned, however,[12] and the Act expressly conditions the Commission's powers of suit on its inability to "secure from the respondent a conciliation agreement acceptable to the Commission."[13] As the House sponsor of the bill stated:

---

**6.** 29 C.F.R. § 1601.23 (1974) (emphasis added). We note that in another context the Commission has apparently argued that § 1601.23 "applies only to non-cooperative and recalcitrant respondents." EEOC v. United States Pipe & Foundry Co., 375 F.Supp. 237, 246 (N.D.Ala.1974).

**7.** 42 U.S.C. § 2000e–5(f)(1) (Supp. II, 1972) provides in part:

If * * * the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent * * * named in the charge.

**8.** Act of July 2, 1964, Pub.L. 88–352, tit. VII, 78 Stat. 253 (codified at 42 U.S.C. § 2000e (1970).

**9.** Alexander v. Gardner-Denver Co., 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974).

**10.** S.Rep.No.92–415, 92nd Cong., 1st Sess. 5 (1971); *see* H.Rep.No.92–238, 92nd Cong., 1st Sess. 8–9 (1971).

**11.** Act of March 24, 1972, Pub.L.No.92–261, § 4, 86 Stat. 105, amending 42 U.S.C. § 2000e–5 (1970) (codified at 42 U.S.C. § 2000e–5(f)(1) (Supp. II, 1972)). *See generally* Sape & Hart, Title VII Reconsidered: The Equal Employment Opportunity Act of 1972, 40 Geo.Wash.L.Rev. 824 (1972).

**12.** 42 U.S.C. § 2000e–5(b) (Supp. II, 1972), amending 42 U.S.C. § 2000e–5(a) (1970) provides in part:

If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion.

**13.** 42 U.S.C. § 2000e–5(f)(1) (Supp. II, 1972).

The conferees contemplate that the Commission will continue to make every effort to conciliate as is required by existing law. Only if conciliation proves to be impossible do we expect the Commission to bring action in Federal district court to seek enforcement.[14]

Indeed, it is essential, as one observer notes, that negotiation remain the primary mode of enforcement, lest the Commission's energies be dissipated in interminable litigation in the Federal courts, which, whatever the outcome, would be detrimental to efficient and effective implementation of Title VII.[15]

Although the lower federal courts have differed over whether the fact of failure of conciliation must be affirmatively pleaded by the Commission,[16] it is beyond dispute that a Commission lawsuit brought before any attempt at conciliation is premature. EEOC v. Westvaco Corp., 372 F.Supp. 985, 991–993 (D.Md.1974); EEOC v. E. I. DuPont de Nemours & Co., 373 F.Supp. 1321, 1333–1334 (D.Del.1974). "The Commission's power of suit and administrative process [are not] unrelated activities, [but] sequential steps in a unified scheme for securing compliance with Title VII." [17]

Against this background we must review the Commission's breach of 29 C.F.R. § 1601.23 (1974) providing for notice to the respondent of the imminent termination of the conciliation process.

We agree with the court below that the regulation affords even the most uncooperative and recalcitrant respondent[18] "the right to be told that it has one last chance to attempt conciliation." [19] In view of the central role of conciliation in the scheme of Title VII we cannot say the regulation is merely "technical." This is an area where animosities run high and negotiations may be difficult to initiate.[20] The regulation reflects formal recognition by the Commission of the need to keep the doors of communication open even where, as here, it has received a flat refusal to engage in conciliation discussions.

We are, of course, aware of the

general principle that "[i]t is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it. The action of either in such a case is not reviewable except upon a showing of substantial prejudice to the complaining party."

American Farm Lines v. Black Ball Freight Service, 397 U.S. 532, 539, 90 S.Ct. 1288, 1292, 25 L.Ed.2d 547 quoting this court in NLRB v. Monsanto Chemical Co., 205 F.2d 763, 764 (8th Cir. 1953).[21] However, the Commission offers no acceptable justification for its breach of the regulation in this case, and we cannot conclude that the Employer was not prejudiced by it. The Employer's

**14.** 118 Cong.Rec. 7563 (1972) (remarks of Congressman Perkins.)

**15.** Blumrosen, The Crossroads for Equal Employment Opportunity: Incisive Administration or Indecisive Bureauracy, 49 Notre Dame L. 46, 47–48 (1973). Blumrosen notes a disturbing change in the Commission since the 1972 amendment; it has hired hundreds of lawyers while leaving vacant the post of Chief of the EEOC Office of Conciliation. *Id.* at 48, 58–59.

**16.** *E. g.,* EEOC v. Eagle Iron Works, 367 F.Supp. 817, 822–823 (S.D.Iowa 1973); EEOC v. Mobil Oil Corp., 362 F.Supp. 786, 788–790 (W.D.Mo.1973); EEOC v. Guaranty Sav. & Loan Ass'n, 369 F.Supp. 36 (N.D.Ala.1973); EEOC v. W. Elec. Co., 364 F.Supp. 188 (D.Md.1973).

**17.** EEOC v. E. I. DuPont de Nemours & Co., 373 F.Supp. 1321, 1333 (D.Del.1974).

**18.** Note 6, *supra* and accompanying text.

**19.** Memorandum Opinion at 7, quoting EEOC v. Firestone Tire & Rubber Co., 366 F.Supp. 273, 276 (D.Md.1973); *see* EEOC v. United States Pipe & Foundry Co., 375 F.Supp. 237, 246 (N.D.Ala.1974); EEOC v. Louisville & Nashville R.R., 368 F.Supp. 633, 638 (N.D.Ala. 1974).

**20.** *Cf.* Gardner, The Development of the Substantive Principles of Title VII Law: The Defendant's View, 26 Ala.L.Rev. 1, 7 (1973).

**21.** *See generally* Note, Violations by Agencies of Their Own Regulations, 87 Harv.L.Rev. 629 (1974).

letter refusing to conciliate is, as we have noted, the event which should have triggered the application of the regulation, not the excuse for ignoring it. Compliance with the regulation, a last gesture by the Commission of a conciliatory attitude, may well give pause to the most (theretofore) recalcitrant employer, now indubitably faced with expensive and time-consuming litigation, and thus lead to a resolution of these disputes in the congressionally preferred forum.

Affirmed.