PARENTS' COMMITTEE OF PUB-
LIC SCHOOL 19 et al.,
Plaintiffs-Appellees,

v.

The COMMUNITY SCHOOL BOARD
OF COMMUNITY SCHOOL DIS-
TRICT NO. 14 OF the CITY OF NEW
YORK et al., Defendants-Appellants,

and

Terrel H. Bell, Individually and in his
capacity as Commissioner of the Unit-
ed States Office of Education of the
Department of Health, Education and
Welfare, Defendant.

No. 1266, Docket 75-7297.

United States Court of Appeals,
Second Circuit.

Argued July 16, 1975.

Decided Aug. 25, 1975.

Rosemary Carroll, New York City (W. Bernard Richland, Corp. Counsel for City of New York, L. Kevin Sheridan, Leonard Koerner, Michael S. Cecere, New York City, on the brief), for appellants.

Kenneth Kimerling, New York City (Jack John Olivero, Herbert Teitelbaum, Puerto Rican Legal Defense and Education Fund, Inc., New York City, Richard S. Panebianco, Ira S. Bezoza, Patricia M. Vergata, Williamsburg Legal Services, Brooklyn, N.Y., on the brief), for appellees.

Before MOORE, FRIENDLY and VAN GRAAFEILAND, Circuit Judges.

MOORE, Circuit Judge:

The plaintiffs, Parents' Committee of Public School 19, an association of Puerto Rican parents whose children attend Public School 19, and certain parents of children attending P.S. 19, originally brought this class action in May 1974 against the Community School Board of District 14 and its members, the school superintendent of District 14, the Board of Education of the City of New York, and its members, and Irving Anker, as Chancellor of the New York City school district (collectively the municipal defendants), alleging that by virtue of split sessions at P.S. 19, the short-time instruction received by the children violated their civil rights. In August 1974, the Court after a hearing ordered the defendants to provide compensatory education at P.S. 19 to make up for the loss of school time.

In December 1974 by a supplemental complaint,[1] adding the United States Commissioner of Education as a defendant, the action was enlarged to charge that a disproportionate amount of the 1974–1975 funds granted pursuant to Title VII of the Elementary and Secondary Education Act of 1965 (the Bilingual Education Act, 20 U.S.C.A. § 880b et seq. [Supp.1975]),[2] which provides for financial assistance to carry out programs of bilingual education for language-handicapped children in both public and nonpublic schools, was being allotted to nonpublic schools in District 14.[3] The supplemental complaint claimed that these proportions were not justified by the ratio of language-handicapped children in nonpublic schools as compared to those in public schools and alleged that the grant violated the First Amendment, Title VII, and the regulations promulgated thereunder.[4]

1. The supplemental complaint sought to amend the plaintiff class to include all Puerto Rican and Hispanic public school children in need of bilingual services in District 14. The class had originally been certified as all Puerto Rican and Hispanic children who had been denied an equal education opportunity through the maintenance of split-session classes at P.S. 19.

2. 20 U.S.C.A. § 880b (Supp.1975) provides in part:

(a) Recognizing—
(1) that there are large numbers of children of limited English-speaking ability;
(2) that many of such children have a cultural heritage which differs from that of English-speaking persons;
(3) that a primary means by which a child learns is through the use of such child's language and cultural heritage;
(4) that, therefore, large numbers of children of limited English-speaking ability have educational needs which can be met by the use of bilingual educational methods and techniques; and
(5) that, in addition, children of limited English-speaking ability benefit through the fullest utilization of multiple language and cultural resources,
the Congress declares it to be the policy of the United States, in order to establish equal educational opportunity for all children (A) to encourage the establishment and operation, where appropriate, or educational programs using bilingual educational practices, techniques, and methods, and (B) for that

purpose, to provide financial assistance to local educational agencies, and to State educational agencies for certain purposes, in order to enable such local educational agencies to develop and carry out such programs in elementary and secondary schools, including activities at the preschool level, which are designed to meet the educational needs of such children; and to demonstrate effective ways of providing, for children of limited English-speaking ability, instruction designed to enable them, while using their native language, to achieve competence in the English language.

3. 20 U.S.C.A. § 880b–7(b)(2) provides in part:
An application for a grant under this part may be approved only if—
\* \* \* \* \* \*
(C) the Commissioner determines . . .
(ii) that, to the extent consistent with the number of children enrolled in nonprofit, nonpublic schools in the area to be served whose educational needs are of the type which the program is intended to meet, provision has been made for the participation of such children; . . .
45 C.F.R. § 123.15 also provides for the participation of language-handicapped children in nonprofit private schools.

4. The 1974–75 school year was the first for which Title VII grants to nonpublic schools were made in District 14 for instructional purposes, although funds to bilingual education programs in the public schools had been made available since 1970–71.

Defendants in March 1975 made a motion for summary judgment based upon the claim that their survey conducted in 1974 had shown that there were 7,659 children in public schools in need of bilingual services whereas there were 10,381 children in Jewish and Catholic nonpublic schools in need of similar services. It was partially on the basis of this survey that the United States Office of Education made its 1974–75 Title VII grant of $486,231 (approximately $330,000 to go to nonpublic schools and $150,000 to public schools) to District 14. Plaintiffs by affidavits sought to contradict defendants' statistics and made a cross-motion pursuant to Rules 33 and 37 of the Federal Rules of Civil Procedure to have by court order the Language Assessment Battery (LAB) test (a test to identify students in need of a bilingual school program) given to all school children in District 14. The LAB had been developed by the New York City Board of Education pursuant to a consent decree issued in the case of *Aspira of New York v. Board of Education of the City of New York,* 72 Civ. 4002 (S.D.N.Y. August 29, 1974), whereby the City undertook to identify and provide bilingual education to all public school children (including those in District 14) in need of such instruction by September 1975.[5]

By April 1975, a Title VII proposal for funds for the 1975–76 school year was being made, in support of which a written test (not the LAB) had been given in both public and parochial schools in District 14. Plaintiffs were dissatisfied with this test and pressed for a ruling on their cross-motion for discovery.

On May 9, 1975 the court granted plaintiffs' motion allegedly for discovery pursuant to Rules 37 and 56(f) and adjourned defendants' summary judgment motion. On May 19, 1975 the court granted plaintiffs' request to file a second supplemental complaint to add the 1975–1976 Title VII proposal, alleging that the application again identified a disproportionate number of language-handicapped nonpublic school students. Thereafter, the parochial schools appeared by counsel and, although voicing no objection to administering the LAB, argued that it was not feasible to give the test prior to the end of the 1974–75 academic year. The court therefore postponed until September 30, 1975 compliance with the directive that the LAB be administered in the parochial schools in District 14. It is this order of May 19th, as reissued on May 23rd, that is the subject of this appeal.

The first point to be resolved is whether the order is appealable. Defendants assert that it is a mandatory preliminary injunction appealable under 28 U.S.C. § 1292(a)(1) since by requiring them to identify children in need of a bilingual education, the order grants part of the ultimate relief requested by the plaintiffs. Furthermore, since the district court did not hold a hearing and make the requisite supportive findings (Rule 52(a), F.R.Civ.P.), the defendants contend that the order should be reversed. Plaintiffs, on the other hand, claim that the order is merely one for discovery to enable plaintiffs to produce such facts as may be necessary for the district court to determine the accuracy of the needs assessment statistics advanced by the respective parties. In short, defendants state that the court was, in effect, granting a mandatory preliminary injunction under the guise of a discovery order; plaintiffs characterize the order as purely discovery.

---

**5.** The cross-motion requested an order:

pursuant to Rules 33 and 37 of the Federal Rules of Civil Procedure compelling the municipal defendants to administer immediately in School District # 14 the [LAB] to every child enrolled in the public and parochial schools located in District 14 to determine and assess the total number of children of limited English-speaking ability; . . . .

At page 10 of their brief, the plaintiffs characterize the motion as seeking "a discovery order requiring defendants to administer the LAB in the parochial schools."

Pursuant to the *Aspira of New York* decree, the LAB has now been given to public school students in District 14, but the plaintiffs still desire it to be given in the nonpublic schools.

The municipal defendants argue that the order far exceeds the scope of pre-trial discovery as specified in the Federal Rules of Civil Procedure (Rules 26–37). To them, the material to be discovered must be in existence and in the possession of some person subject to the order. In contrast, they say, this order requires them to obtain factual data for plaintiffs at substantial expense [6] by giving a specific test which has plaintiffs' approval. This manufacturing of evidence goes beyond those cases cited by the plaintiffs in which courts have required defendants to compile information from data already in existence and under the control of the defendants.[7] The municipal defendants thus question why, since the ultimate object of the tests is to discover the number of children requiring bilingual education, the language surveys used by them are not accurate and adequate and how the tests sponsored by plaintiffs would prove to be more accurate.

Although the courts have over recent years been forced into arbiters' roles in the field of education, the courts might well shy away from becoming administrators instead of arbiters. Were the defendants' needs assessment tests inadequate? Quite frankly, we don't know. And the reason for this lack of knowledge is an equal lack of any factual basis for an opinion. All that we do know is that by mandatory decree the district court has directed the municipal defendants to subject thousands of school children to a particular test at considerable expense. In other words, these defendants are required not to disclose or produce material in existence but to create new information.

The order appealed from is of a decidedly hybrid nature. Its judicial genes give it little resemblance to a discovery order. It inclines more to the side of mandatory injunctive relief. The supplemental complaint did not in express terms pray for the administering of the LAB, but, paragraph (f) did request an injunction "requiring the defendants to identify and demonstrate to the Court by objective evidence the nature and magnitude of the educational needs of children of limited English-speaking ability residing in District No. 14 enrolled in nonprofit private schools." And to this phase of the litigation, the order gives finality. Future appeal would be of no avail. The children would have been tested; the $116,000 (or whatever the cost) would have been expended. There could be no recall. Under these circumstances there is analogy to be found in the Supreme Court's approach in *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 545, 69 S.Ct. 1221, 93 L.Ed. 1528 (1947) and *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 171–72, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). In *Cohen* a state statute made the plaintiff in a stockholders' derivative action liable for litigation expenses, if ultimately unsuccessful, and under a burden of posting security therefor in advance. On appeal from an order holding the statute inapplicable, the Supreme Court held the order appealable over objection that it was not final, on the oft-quoted theory that it fell within a small class of cases which finally determined separable claims "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." 337 U.S. at 546, 69 S.Ct. at 1226. "No verbal formula yet devised can explain prior finality decisions with unerring accuracy or provide the utterly reliable guide for the future," *Eisen, supra*, 417 U.S. at 170, 94 S.Ct. at 2149 (footnote omitted) (imposition of notice costs in a class action held to be appealable), but there

---

**6.** The municipal defendants have stated the amount to be $116,000. Plaintiffs dispute this figure as too high.

**7.** *E. g., New Orleans Public Service, Inc. v. Brown*, 507 F.2d 160 (5th Cir. 1975); *Circle K Corporation, Inc. v. EEOC*, 501 F.2d 1052 (10th

Cir. 1974); *EEOC v. Hickey-Mitchell Co.*, 372 F.Supp. 1117 (E.D.Mo.1973), *rev'd on other grounds*, 507 F.2d 944 (8th Cir. 1974); *Chance v. Board of Examiners*, 330 F.Supp. 203 (S.D. N.Y.1971), *aff'd*, 458 F.2d 1167 (2d Cir. 1972).

would seem to be no valid distinction between an order requiring a defendant to spend a considerable sum of money and to take other affirmative steps, not so much for discovery as defined in the Rules, but rather to assist plaintiffs in establishing their case, and the orders in *Cohen* and *Eisen*. Accordingly, we find that the order of the district court is appealable.

Before the consequences of the district court's order become irreversibly final we believe that the parties should have an opportunity to submit their proof upon a hearing before the district court so that it will have an opportunity to determine in an adversary hearing the merits of the respective tests and to make findings thereon so that an appellate court, when, as and if an order is entered thereon and appealed, can have a factual foundation for its opinion.

■ There have been no findings on the merits of the LAB or on the alleged inadequacies of the defendants' methods used to identify language-handicapped children. Furthermore, the district court has not directed its attention specifically at the effect on this litigation of the *Aspira of New York* decree under which the defendants are obligated to provide bilingual education in the public schools to those children who are in need of it.[8] Perhaps that decree will result in the full bilingual education program desired by the plaintiffs. We believe that the district court should address itself to these questions before entering an order, if one is ultimately found necessary at all, which in effect requires a reidentification of those pupils needing a bilingual education. Since the order appealed from is more in the nature of a prelimi-

nary injunction, and since findings of fact and conclusions of law would seem to be at least as essential in granting an injunction as when one is denied (*see Hart v. Community School Board*, 487 F.2d 223 [2d Cir. 1973]), we reverse and remand to the district court for the taking of such further evidence as the parties may wish to present and appropriate findings of fact and conclusions of law.

Reversed and remanded.

FRIENDLY, Circuit Judge (concurring):

I agree that the order under appeal, however it may be characterized, should not be allowed to stand without a better explanation of the justification for it, particularly in the light of the consent decree in *Aspira of New York v. Board of Education of the City of New York*, 72 Civ. 4002 (S.D.N.Y. August 29, 1974). The consent decree seemingly fulfills plaintiffs' demands with respect to bilingual education for their own children[1] and, as to this phase of the case, leaves them only with equal protection and perhaps establishment clause claims concerning the allegedly overgenerous allocation of the federal grant to parochial schools, which claims are laden with some problems of standing and jurisdictional amount unnecessary to consider here. Such concern as I have with my brother Moore's opinion relates not to his result but to the basis on which our appellate jurisdiction is supported.

In *International Products Corporation v. Koons*, 325 F.2d 403, 406–07 (2 Cir. 1963), we said, for reasons there stated, that "[w]e think it better, in line with our prior decisions, to continue to read § 1292(a)(1) as relating to injunctions

---

8. On May 23, 1975, the municipal defendants argued that the plaintiffs could get all the relief they were seeking by way of the *Aspira of New York* decree, with which, it was asserted, District 14 intended fully to comply. The district court indicated that it had not had an opportunity to examine the *Aspira of New York* decree and therefore was unable to respond intelligently to the defendants' contentions. J.A. 606–09.

1. The plaintiff class in *Aspira* was defined as:

   all New York City public school children whose English language deficiency prevents them from effectively participating in the learning process and who can more effectively participate in Spanish, and the parents and guardians of these children.

which give or aid in giving some or all of the substantive relief sought by a complaint . . . and not as including restraints or directions in orders concerning the conduct of the parties or their counsel, unrelated to the substantive issues in the action, while awaiting trial." See also *Grant v. United States,* 282 F.2d 165 (2 Cir. 1960).

Prior to the consent decree in *Aspira,* it could have been argued plausibly, although I do not think successfully, that insofar as the LAB test was to be given in public schools, the order gave or aided in giving "some or all of the substantive relief" sought by the complaint since it would identify the children who would benefit from a ruling that special instruction was required. However, as indicated above, any need for testing public school children has been eliminated by the *Aspira* decree which already requires the test to be given to them quite apart from any order in this case, and plaintiffs' sole interest in the test would now seem to be that its administration in the parochial schools may show that the number of children in such schools who need bilingual instruction has been overstated. Thus the results of the test would at best be evidence useful to the plaintiffs in proving their equal protection or establishment clause claims. The principle of *Koons* seems to me to be that an order containing words of restraint or direction does not come within § 1292(a)(1) simply because it advances (or fails to advance) a plaintiff along the road to success; the order granted or refused must be one telling the defendant to stop or to start some substantive action at issue in the suit. See 9 Moore, Federal Practice ¶ 110.20[1] at 232 (1973) (although "ingenious counsel have found injunctions lurking in virtually every ruling that a district court can be called upon to make[,] [f]or the most part, the courts have declined to expand the his-

toric concept of an injunction"). That the order does not fit traditional notions of discovery does not mean that it is an interlocutory injunction within § 1292(a)(1).

However, despite our frequent iterations that the doctrine of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546–47, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), "must be kept within narrow bounds, lest this exception swallow the salutary 'final judgment' rule," *Weight Watchers of Philadelphia, Inc. v. Weight Watchers International, Inc.,* 455 F.2d 770, 773 (2 Cir. 1972)—a principle which unfortunately we have not always heeded, see *Katz v. Realty Equities Corp.,* 521 F.2d 1354, 1362–64 (2 Cir. 1975) (concurring opinion); *Parkinson v. April Industries, Inc.,* 520 F.2d 650, 658–60 (2 Cir. 1975) (concurring opinion)—this is an appropriate case for the application of *Cohen,* as that decision was recently explicated in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 169–72, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). As in *Eisen* the order here at issue requires defendants to expend a considerable sum of money which they will almost certainly not be able to recover at a later date. In addition, the order is not one for discovery in the ordinary sense of that term, and the question how far a court may go in requiring defendants to develop evidence for plaintiffs in public interest actions is novel, important, and doubtless recurring. See Note, Appealability in the Federal Courts, 75 Harv.L.Rev. 351, 364–67 (1961). I would therefore leave our traditional construction of § 1292(a)(1) intact, rest appellate jurisdiction solely on *Cohen* and § 1291, and hold that even though the order is not an injunction within F.R.Civ.P. 52(a), it requires more explanation than the judge has given. Although some passages in the majority opinion seem to adopt this analysis, the basis of our jurisdiction should not be left in doubt.