EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION, Plaintiff-Appellant,

Orlando S. Lopez and Jose G. Ortiz, Plaintiffs in Intervention, as to Defendant, Zia Company,

v.

The ZIA COMPANY and Los Alamos Constructors, Inc., Defendants-Appellees.

No. 76–1967.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Jan. 25, 1978.

Decided July 17, 1978.

Rehearing Denied Sept. 1, 1978.

■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■

■■■■■■■■■■■■

■■■■■■

■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■

■■■■■■

Paul M. Mirengoff, Washington, D. C. (Abner W. Sibal, Joseph T. Eddins, Jr., Bea-

trice Rosenberg, Equal Employment Opportunity Commission, Washington, D. C., with him on the brief), for plaintiff-appellant.

Victor R. Marshall, Albuquerque, N. M. (William A. Sloan, Albuquerque, N. M., with him on the brief), of Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, N. M., for defendants-appellees.

Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

This is an appeal from a judgment in an action brought by the Equal Employment Opportunity Commission (EEOC) against The Zia Company and its wholly-owned subsidiary, Los Alamos Constructors, Inc. (hereafter collectively referred to as Zia) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The complaint alleged that Zia had been and was at the time of the suit discriminating against Spanish-surnamed persons and American Indians with respect to hiring, promotions and layoffs. From a judgment in favor of Zia, appeal was taken to this Court.

Appellant raises two issues in this appeal: Whether the District Court properly found that the EEOC had a duty to conciliate this case in good faith and here failed to meet that duty; and whether that Court's finding that the EEOC failed to establish discrimination in Zia's employment practices is supported by the evidence.

The suit stems from charges filed between 1969 and 1972 that Zia discriminated on the basis of national origin with respect to layoffs. The Commission's investigation led it to believe the charges were true. It then asked Zia to engage in conciliation discussions on April 19, 1973, with talks beginning two or three weeks after this Court's opinion on the class action aspects. *Brito v. Zia Co.,* 478 F.2d 1200 (10th Cir. 1973).

Title VII places primary emphasis on conciliation to resolve disputes. The pertinent portions of the statute read:

If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion.

42 U.S.C. § 2000e–5(b).

If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under Subsection (c) or (d) of this section, the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court.

42 U.S.C. § 2000e–5(f)(1).

An affidavit filed by the Assistant Chief Counsel of the Energy Research Development Agency, formerly the Atomic Energy Commission (AEC), states "That the contractual relationship between defendants [Zia] and the AEC (now ERDA) is such that the AEC would pay any back pay settlement. Accordingly, any conciliation agreement entered into by defendant must first receive the approval of the AEC." The record demonstrates it was this referral-approval process between Zia and the AEC that foiled initial conciliation efforts and later led to disagreement about the EEOC's duty of good faith in the conciliation process. The facts leading up to conflict over the issue of good faith are important to our resolution of this case.

Pat Trujillo, the EEOC's conciliator for this case in the Albuquerque district office, sent Zia a proposed conciliation agreement on August 9, 1973, that contained the following boilerplate clause:

3. The Commission shall determine whether Respondent has complied with the terms of this agreement. In the event the Commission shall determine that the Respondent has failed or refused to comply with the terms of this Agreement, the Commission shall within a reasonable time after discovery of such failure or refusal, notify the Respondent in writing of its determination. If within thirty days after receipt of such determination the Respondent has failed to comply with the terms of this Agreement, or show good cause why he should not comply, all waivers, releases and covenants not to sue shall be null and void, and such failure or refusal to comply shall be deemed *prima facie* evidence of breach of this Agreement. . . .

Zia submitted its proposed conciliation agreement on August 13, 1973, that omitted all language concerning determination of breach of the agreement. Several phone calls took place during this time in which Tom Robles, the EEOC Albuquerque District Office Director, had agreed to modify the EEOC's proposed Paragraph 3 to read, "The Commission shall determine whether the Respondent has complied with the terms of this Agreement," and eliminated the provision making the Commission's determination presumptive evidence in court. Zia's manager, Wendell Miller, found the modified EEOC conciliation proposal acceptable and requested authority from the AEC to sign it. The AEC would not give its approval and instead recommended several other changes. When Zia communicated this to Mr. Trujillo and invited the EEOC to accept Zia's proposed agreement, Mr. Trujillo said the Zia proposal was unacceptable. Zia and the AEC discussed the matter again and wrote Mr. Trujillo another time and requested changes in the EEOC proposal. Trujillo called Zia officials soon thereafter and said he felt conciliation had

failed and was going to recommend suit. Zia's attorney passed this along to the AEC immediately.

The conciliation negotiations then took place directly between counsel for the AEC and Mr. Robles. When nothing productive resulted Mr. Robles mailed three letters of failure of conciliation on October 25 and 26 and November 9, 1973, stating the matter would be referred to the litigation section unless halted by Zia's decision to reopen conciliation within five days. Zia never responded, at the direction of the AEC.

Leonard Jacobvitz, counsel for AEC, sent a memo to AEC Washington headquarters on November 20, 1973, noting that conciliation had failed, that the EEOC planned a suit in the matter and requested any help the Washington office could provide "in getting EEOC at the Washington level to delete the objectionable language" from its proposed conciliation agreement. In mid-January, 1974, the AEC communicated to Mr. Jacobvitz that discussions with the EEOC in Washington had failed to get the objectionable paragraph deleted because it was "their minimal requirement and they will not alter it," the exact position taken by Mr. Robles throughout conciliation. In this January letter the Office of General Counsel for the AEC recommended signing the agreement because, "In our opinion the agreement could be signed in its present form without any significant danger of future complications." The letter also communicated the EEOC's concern "that AEC's attitude [about conciliation] tended to impede rather than further E.E.OC's [sic] efforts to compel Zia's compliance with the law."

It was not until February 12, 1974, that the Area Manager for the AEC gave Zia's manager, Wendell Miller, permission to sign the EEOC's proposed conciliation agreement. The AEC recognized in that letter that Mr. Miller had recommended signing the agreement on September 4, 1973, some six months earlier. By this time the Zia matter had been referred to EEOC's Denver Regional Litigation Center for review of potential litigation possibilities against Zia. After the AEC gave Zia permission to sign the agreement, Mr. Miller asked his in-house counsel, L. J. Maveety, to send a letter to Mr. Trujillo reopening the conciliation. The Albuquerque District Office attempted to reopen those negotiations by requesting the Denver Office return the file, but the Regional Director of EEOC said the matter was now out of the conciliation stage and Mr. Robles' hands.

While the Zia officials requested reopening of conciliation, the Acting Regional Attorney of the Denver Regional Litigation Center, Peter Sanchez-Navarro, Jr., sent Mr. Maveety a letter notifying Zia of the Commission's authorization to bring suit. He enclosed a copy of the complaint his office planned to file and offered to discuss "the possibility of a voluntary resolution of the suit by Consent Decree . . ." From then on Zia was out of the picture in terms of letter writing and negotiations, with the AEC counsel's office undertaking all communications about the suit with Nancy Bragg, the case trial attorney. Illustrative of the meetings and of the relationship between AEC, Zia, and the EEOC is the following excerpt from an internal AEC memorandum in evidence:

> Representatives of ALO and LAAO met with EEOC in Denver on March 1, 1974. AEC representatives explained to EEOC the relationship between AEC and its operating contractors and advised them that any backpay settlement agreed upon would be funded by AEC. Our representatives also advised EEOC that if AEC could be presented with convincing evidence that violations of the Civil Rights Act had occurred and that a proposed settlement figure was valid, we would definitely cause the cases to be settled. We made it clear that we wished to explore settlement and that a "Government against Government" lawsuit would be ill-advised and unnecessary, assuming that EEOC had evidence to support its position.

Another telling communication occurred after consent decree negotiations failed because the AEC believed the EEOC was in-

creasing the nature of the suit by including a demand for back pay from all improperly layed off employees from 1965 to date. The Assistant Chief Counsel for the AEC wrote Mr. Sanchez-Navarro on March 22 that:

As our representatives stated in our March 1 meeting, we were most interested in discussing a prelitigation settlement of the Zia and LACI matters. However, we are now advised that EEOC has found it necessary to file suit against Zia and LACI. Your decision to file suit has injected a number of new considerations into the matter. *For example, we must now make arrangements for Zia and LACI to be represented by counsel.* I am sure you will appreciate that since Zia and LACI are now defendants in a lawsuit, we are in no position to engage in discussions which could affect the various defenses available to the defendants without the full knowledge and concurrence of those who will ultimately be responsible for defending the suit. (Emphasis added.)

It is clear from the record that a letter from Ms. Bragg to the AEC and the position espoused therein, on March 11, was the major factor in the failure to enter into a conciliation agreement and what injected the good faith issue into the case. It was considered that her letter opened up many new areas of litigation and negotiation that had not been present in the narrowly-defined conciliation stage, particularly back pay for all affected employees. There were inferences at trial and throughout discovery that Ms. Bragg singlehandedly spoiled out-of-court settlement of this case. On May 7, 1974, the EEOC requested and was granted an order replacing Ms. Bragg with Sylvan Roybal as the trial attorney for this case. Roybal in fact tried the case.

After trial the district judge made oral findings of fact. He recited that the Zia Company and its subsidiary were AEC prime contractors, under the absolute dominion and control of the AEC; that at the time referral of the case was made to the Denver Litigation Center the local EEOC official knew or should have known that the AEC and the EEOC were negotiating a conciliation agreement at the Washington level; and that the regional EEOC officials improperly refused to continue to conciliate in good faith.

He found "the essential condition precedent of the exhaustion of efforts to conciliate has not been accomplished  .  .  .  I do not think I have any jurisdiction at all to grant any relief in this case because of the total failure to comply with that statutory mandate."

Nevertheless, he addresses the merits, by holding, "I find that the plaintiff has failed to prove any discrimination, directly or indirectly, by the evidence in the case." In commenting on this finding he stated that the hiring and rehiring issues were dropped and the case involved only alleged discrimination in promotions and layoffs. He emphasized that:

*Brito* commanded that there be objective testing procedures set up as nearly as may be under a reasonable man test. I think that Zia and LACHE [sic] made a full and a reasonable effort to set up objective tests and I think their testing procedures are as objective as any reasonable man can be expected to devise.

### I

■ Prior to 1972 the EEOC was not empowered to bring suits itself. The courts held that the aggrieved parties' private action could not be held up pending conciliation. *E. g., Miller v. International Paper Co.,* 408 F.2d 283 (5th Cir. 1969). Only after the 1972 law changes, when the EEOC commenced suing, did the need for conciliation efforts as a prerequisite to suit, and questions of their sufficiency, arise. Since the Act states that the Commission "shall" endeavor to eliminate alleged unlawful employment practices by conciliation, and sue only if it is unable to secure a conciliation agreement, it has generally been held that a showing of some effort is a precondition of bringing suit. *E. g., Equal Employment Opportunity Comm'n v. Container Corp. of America,* 352 F.Supp. 262 (M.D.Fla.1972);

*Equal Employment Opportunity Comm'n v. United States Pipe and Foundry Co.,* 375 F.Supp. 237 (N.D.Ala.1974). Failure to give notice of the breakdown of the conciliation effort also has been held to be a bar to maintaining an action. *Equal Employment Opportunity Comm'n v. Hickey-Mitchell Co.,* 507 F.2d 944 (8th Cir. 1974); *Equal Employment Opportunity Comm'n v. Firestone Tire and Rubber Co.,* 366 F.Supp. 273 (D.Md.1973).

These courts and others sometimes speak in terms of the defect being jurisdictional. But often they do assert continuing authority over the matter. In one case failure by the EEOC to make a timely reasonable cause determination and after such determination to attempt conciliation before filing suit was held to go to whether a claim has been stated, rather than to subject matter jurisdiction. *Equal Employment Opportunity Comm'n v. Westvaco Corp.,* 372 F.Supp. 985, 991 (D.Md.1974). In the instant case, there was an effort at conciliation, and notice given before suit was commenced.

We hold that the court had jurisdiction over the parties and the cause of action. The inquiry into the duty of "good faith" on the part of the EEOC is relevant to whether the court should entertain the claim, or stay the proceedings for further conciliation efforts, not to its power over the cause. In this sense it is analogous to the supervisory power of the courts over management-labor union arbitration disputes under the Labor Management Relations Act. *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); 29 U.S.C. § 185. Thus, if the further conciliation efforts which we find necessary should fail, the court retains jurisdiction to make appropriate findings and orders without retrial and without creating statute of limitations problems with respect to individual claims represented in the EEOC suit. *Cf. Equal Employment Opportunity Comm'n v. Canadian Indemnity Co.,* 407 F.Supp. 1366 (C.D.Cal.1976).

■ We hold that the EEOC is required to act in good faith in its conciliation ef-

forts. Relevant is the Conference report accompanying the House of Representatives' version of the 1972 amendments:

> The conferees contemplate that the Commission will continue to make every effort to conciliate as is required by existing law. Only if conciliation proves to be impossible do we expect the Commission to bring action in federal district court to seek enforcement.

118 Cong.Rec. H1861 (March 8, 1972).

Several EEOC Title VII cases assume a duty of good faith in the negotiating process, without treating it expressly in a context which can provide assistance to us here. *E. g., Equal Employment Opportunity Comm'n v. United States Pipe and Foundry Co.,* 375 F.Supp. 237 (N.D.Ala. 1974). *Brennan v. Ace Hardware Corp.,* 495 F.2d 368 (8th Cir.1974) specifically treated the duty of a government agency in conciliation efforts in the context of the Age Discrimination in Employment Act, and its reasoning is appropriate and applicable to the instant case. The law declares that the Commission "shall" seek conciliation; it is inconceivable to us that good faith efforts are not required.

■ At the same time, we agree that a court should not examine the details of the offers and counteroffers between the parties, nor impose its notions of what the agreement should provide, any more than it would if dealing with labor contract negotiations under the Labor Management Relations Act. Certainly were it not for the involvement of another government agency, the AEC, in this case, we would rule that the EEOC had made satisfactory and good faith efforts in the conciliation process.

■ A private employer may not escape responsibility for its own violations of Title VII by relying upon its contract with any other party, including an agency of the United States Government. For that reason we cannot rule that this is a fight between two government agencies governed by the provisions that if negotiations fail the case is to be placed in the hands of the Attorney General for his determination

as to whether to sue. At the same time, we note that the private employer, Zia, found the proposed conciliation agreement satisfactory and wanted to sign it. The reason that the AEC ordered Zia not to sign was the presence of a provision dealing not with past violations, but to an affirmative action program and the evidentiary standing of the EEOC's findings as to any future violations. This was conceived to apply to other AEC contractors and to conflict with the government agency's notions of its own statutory responsibilities.

■ The parties recognized this agency-to-agency conflict, and as soon as the issues were narrowed the negotiations took place directly between the two governmental agencies. Under these circumstances, we think that time expectancies quite appropriate for responses by a private employer are not realistic. Giving a notice with five days only to respond, for example, is not reasonable where it is known that the notice must be transmitted through the bureaucratic channels of the United States Government.

■ We hold that the facts support the trial judge's finding here that there was, or should have been, knowledge that negotiations were being conducted between the two government agencies at the Washington level, that there was a reasonable expectation that if given more time the conflict over the paragraph at issue would be resolved, and that the EEOC regional litigation officials acted improperly. We do not say the EEOC regional officials were required to accept the conciliation agreement negotiated by its local office, now that the AEC was willing to allow Zia to sign. But if their demands were to be escalated as was done in the Bragg letter of March 11, 1974, there must be new meetings between the parties and sufficient time given to permit an opportunity for reasoned responses, considering the parties involved.

## II

In spite of our holding above upon the conciliation issue, we think it appropriate to comment on the trial court's ruling that no discriminatory practices by Zia were shown by the evidence. In so holding the court mentioned our decision in *Brito v. Zia Co.*, 478 F.2d 1200 (10th Cir. 1973), and the fact that it required the employer to adopt objective criteria for evaluation so far as is reasonably possible. The trial judge in his oral findings commented that Zia had adopted objective criteria, obviously referring to the new evaluation forms put into use in 1973 after being developed by specialists hired for that purpose.

■ The court's findings give no specific attention to the practices prior to 1973 which the district court in *Brito* found to be discriminatory and to which this Court referred as follows:

The test was not validated according to Zia's own guidelines in that the evaluators did not grade the employees according to their average daily amount of acceptable work produced during the review period. Therefore, the test was based almost entirely on their subjective observations.

The test was not administered and scored under controlled and standardized conditions, with proper safeguards to protect the security of test scores and to insure that the scores did not enter into any judgments of employee adequacy that are to be used as criterion measures, as required by § 1607.5(b)(2) for the minimum requirements for validation. Empirical evidence supporting the test's validity based on studies employing acceptable procedures were not presented by Zia as required by the EEOC guidelines.

Title VII prohibits informal testing procedures which might discriminate against minority groups. Discrimination can be shown to exist "when there are differential rates of applicant rejection from various minority and nonminority or sex groups for the same job or group of jobs . . ." 29 CFR 1607.13. The appellants have shown that the informal testing procedures resulted in higher rates of reduction in force of minority groups.

478 F.2d at 1206. Originally the EEOC alleged that Zia discriminated in five areas: hiring, harassment, promotions, layoffs and rehiring. Hiring and harassment claims have been dropped, and the rehiring issue, which concerned how long layoffs lasted, became part of the layoff issue. While promotions remained an issue in the case there was evidence that Zia had originally brought in skilled whites as foremen and there had been little turnover. That was alleged to be the principal reason for the underrepresentation of minorities among Zia's foremen, even though the promotion procedures were admittedly subjective. The EEOC's brief on appeal states that it does not contest the district court's finding that Zia did not discriminate with respect to promotions, and therefore does not discuss the promotions policy. Under these circumstances we are not inclined to treat the promotions issue as one which is to be considered open upon the remand of the case.

This leaves the question of layoffs. The Court noted that it was handicapped by the fact there was no pretrial order in the case defining the issues controverted between the parties. Past discrimination was alleged in the complaint. Several individual workmen were intervenors in the case until their cases were settled. The EEOC brief complains that the Court made no findings as to pre-June 1973 discriminations. The evidence at trial, however, was mostly about the conciliation process and the meaning of the statistical data. Only one workman testified, and that was about being personally passed over for promotion.

We find enough evidence in the record to support the Court's holding that there was no discrimination in layoffs in the post-1973 period. But as to the pre-1973 discrimination in layoffs the findings are insufficient. If a conciliation agreement is not negotiated during the period the court stays the proceedings for that purpose, it should make more specific findings as to the pre-1973 layoffs, and if necessary take additional testimony.

The case is remanded for proceedings consistent with this opinion.