**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**SEARS, ROEBUCK AND COMPANY, Defendant.**

Civ. A. No. 79–507–N.

United States District Court, M. D. Alabama, N. D.

May 22, 1980.

---

Richard Theis and Catherine Crockett, Equal Employment Opportunity Commission, Washington, D.C., and by Jerome C. Rose, Equal Employment Opportunity Commission, Birmingham, Ala., for plaintiff.

Edward Ashworth and Pamela S. Horowitz, Washington, D.C., and by Joe L. Dean, Jr., Opelika, Ala., for defendant.

## MEMORANDUM OPINION

VARNER, Chief Judge.

This cause is now before the Court on the Defendant's motion to dismiss filed herein November 13, 1979. By Order of November 20, 1979, this Court served notice that it would treat said motion to dismiss as a motion for summary judgment. The motion was submitted February 5, 1980, along with the pleadings, affidavits, exhibits, answers to interrogatories, as well as other materials on file with this Court. Argument on the motion was heard March 4, 1980. The parties have also provided this Court with extensive briefs on the motion.

Upon consideration of said motion, this Court finds that there exists no material issue of fact as to the issue of whether the Plaintiff complied with certain statutory prerequisites to suit and that, as a matter of law, Defendant is entitled to have this suit against it dismissed without prejudice due to the Plaintiff's failure to satisfy stat-utory prerequisites to the bringing of this civil action. The reasons for dismissal are as follows.

## FINDINGS OF FACT

This Court finds that the pleadings, affidavits, exhibits and other materials on file with the Court, when viewed most favorably for the nonmoving Plaintiff, reveal the following material facts:

1. Sears, Roebuck and Co. (hereinafter referred to as Sears), operates a retail store in Montgomery, Alabama, which is located at 1920 South Court Street. Pursuant to a nation-wide voluntary affirmative action program in effect since 1968, the manager of the Montgomery Sears store, Earle Dewey Kitchen, prepared or had prepared "Unit Manager's Quarterly Report(s) of Affirmative Action Progress" for the period between May, 1973, and October, 1973.[1] Generally, those reports reflect that, during that period, 60 of the 167 persons hired by the Montgomery store—or 35.9 percent—were black. Those reports also reflect that 46.7 percent of those submitting applications (469 of 1003) were black. Mr. Kitchen stated in his affidavit that, during the 180 days preceding August 30, 1973,[2] the Montgomery store hired 145 persons of whom 50—or 34.5 percent—were black. According to the Bureau of the Census, blacks comprised 30 percent of the civilian labor force in Montgomery, Autauga and Elmore Counties during the time frame listed above. According to the Equal Employment Opportunity Commission (hereinafter

---

1. The report for May–July, 1973, reflected that, of the 81 persons hired at the store, 28—or 34.5 percent—were black and that blacks constituted 21.3 percent of the total number of employees at the Montgomery store. During that period, 58 whites and 10 blacks left employment at the store. Approximately nine percent of the blacks submitting applications were hired (28 of 311) while 23.8 percent of the whites submitting applications were hired (53 of 223). The report for August–October, 1973, reflected that, of the 86 persons hired during that period, 32—or 37.3 percent—were black and that blacks constituted 20 percent of total employment at the Montgomery store. During that period, 70 whites and 35 blacks left employment at the store. Approximately 11.2 percent of the blacks submitting applications were hired (32 of 284) while 29.1 percent of the whites submitting applications were hired (54 of 185). The significance of the aforementioned two quarterly reports relates to the fact that all of the first and a portion of the second report concern hiring practices of the Montgomery Sears store during the 180 days immediately preceding August 30, 1973. See ¶ 3 infra.

2. Approximately March 1–August 30, 1973. The quarterly reports do not cover the months of March and April, 1973. See ¶ 3 infra, and Part IV infra, for rational that only these 180 days are pertinent hereto.

referred to as the EEOC), blacks constituted 27.9 percent of the civilian labor force in the Montgomery area.[3]

2. Mr. Kitchen knows of only two charges of employment discrimination that have been filed against the Montgomery Sears store in the past 20 years, neither of which is involved in this case. One charge was administratively closed by the EEOC August 9, 1974. The other charge involves an allegation of reverse discrimination by a white employee and is still pending administratively. The EEOC has offered no evidence of any other charge against the Montgomery Sears store.

3. On August 30, 1973, William H. Brown, III, who was acting as Chairman of the EEOC, signed an unsworn EEOC charge against Sears, all facilities, alleging general patterns and practices of nationwide discrimination against minorities and women.[4] That charge named as the respondent: "Sears, Roebuck and Company, 925 South Homan Avenue, Chicago, Illinois 60607." On September 10, 1973, the EEOC served notice of the charge upon Sears in Chicago. No such notice was served on the Montgomery facility. On September 11, 1973, Commissioner Brown signed an affidavit stating that he had reasonable cause to believe that the charges against Sears (all facilities) were true.

4. The parties seem to agree that Commissioner Brown's five-year term with the EEOC officially expired July 1, 1973. (It would appear that it may have expired on June 30, 1973, as it apparently began July 1, 1968). Section 705 of Title VII provides, under certain circumstances, for a 60-day holdover period for EEOC commissioners after the expiration of their term.[5] Commissioner Brown's 60-day holdover period ended on either August 29 or 30, 1973, the date he signed the charge against Sears. Congress had recessed August 3, 1973, for summer recess, but the Secretary of the Senate was authorized to receive messages from the President during the recess. On August 17, 1973, the President announced his intention to nominate John H. Powell, Jr., to succeed Brown. However, Powell's nomination was not submitted by the President to the Senate until September 5, 1973, the day the Senate returned from summer recess and at least 66 days after Brown's original term had expired.

5. Sears employs approximately 400,000 persons in more than 1,400 facilities. As of January 31, 1976, Sears had 858 retail stores with stores located in all 50 States. The remaining facilities include parent, territorial, group and zone offices, as well as catalog order plants, catalog sales offices, warehouses, and service and parts centers.

6. For the purpose of investigation, the EEOC selected 20 metropolitan areas within which various Sears facilities would be statistically examined.[6] Sears provided the

---

3. Between February, 1966, and January, 1979, the total number of employees in the Montgomery store declined from 429 to 389. During this period, the number of black employees at the Montgomery store increased from 29 to 108. Of the total number of employees hired at the Montgomery store, blacks comprised 37.9 percent in 1974, 44.6 percent in 1975, 32.9 percent in 1976, 39.1 percent in 1977, and 37.9 percent in 1978.

4. The charge listed as its "Basis of Discrimination" race or color, sex and national origin. The "Nature of the Charge" or issue was discrimination in (1) hiring, (2) wages, (3) job classification, (4) benefits, (5) terms and conditions, (6) discharge, (7) promotion, (8) training/apprenticeship, (9) layoff, (10) exclusion, (11) qualification/testing, (12) recall, (13) seniority, (14) advertising, and (15) "unspecified and other" which was specified to include

"Transfers conversion Recruitment Maternity". The "Place of alleged violation" was listed as "Nationwide-All Facilities".

5. That section provides, inter alia: "[A]ll members of the Commission shall continue to serve until their successors are appointed and qualified, except that no such member of the Commission shall continue to serve (1) for more than sixty days when the Congress is in session unless a nomination to fill such vacancy shall have been submitted to the Senate, or (2) after the adjournment sine die of the session of the Senate in which such nomination was submitted." 42 U.S.C. § 2000e–4(a).

6. The 20 designated metropolitan areas were: Atlanta, Boston, Chicago, Cleveland, Columbus (Ohio), Dallas/Ft. Worth, Denver/Boulder, Houston, Los Angeles, Memphis, Miami, Milwaukee, Montgomery, Newark, New Orleans,

EEOC with computerized information current to August 31, 1973, for each of the 123,400 employees working at the selected facilities. Said information included the sex, race or religion, facility number, department number, and job code for each sample employee, as well as whether the employee was on full-time or part-time status.

7. Between January, 1974, and September, 1976, settlement discussions were held pursuant to 29 C.F.R. § 1601.19(a) between representatives of the EEOC and Sears. The discussions were terminated by the EEOC.

8. On April 19, 1977, the EEOC, by a two to one vote, issued its decision against Sears based primarily on the statistical evidence provided to the EEOC by Sears. Generally, the EEOC found that Sears had engaged in a general pattern of racial and sexual discrimination. In regard to minorities, the EEOC generally found that the pattern of discrimination (all facilities) involved (1) the failure to promote minorities, (2) assignment of minorities to catalog order facilities, (3) disparate rejection rates of minority applicants for employment, (4) assignment of minorities to "race-typed" departments and jobs, and (5) disproportionate layoff of minorities. The decision listed 83 "suitable" charges filed by the individuals against various Sears facilities and the entire Sears organization that had been consolidated with the decision.

9. Between October 16, 1977, and November 29, 1978, 28 conciliation meetings were held between representatives of Sears and the EEOC. A summary of the content of those meetings reflects that the negotiations covered Sears' nation-wide employment practices and that discussions did not involve individual facilities. The negotiations made little, if any, real progress. On several occasions, the EEOC requested current data updating that obtained in 1973, but due to the EEOC's stated intention to disclose that information, Sears declined to provide such data. See, *Sears, Roebuck and Co v. EEOC*, 435 F.Supp. 751 (D.D.C.1977).

10. At one point, the EEOC insisted that three issues be settled before conciliation could continue: (1) Sears would be required to respond in writing to the EEOC's current settlement proposal; (2) Sears would have to agree to an intensive negotiating schedule; (3) Sears would have to settle both the EEOC charge and the 83 "suitable" charges together in conciliation. According to an EEOC negotiator, a Sears representative responded that Sears' settlement of any of the 83 "suitable" charges would be contingent on agreement on the Commissioner's charge. However, further conciliation meetings were agreed upon and negotiations continued for some time.

11. At a meeting held June 30, 1978, the negotiations began to focus on recruitment goals for Sears. It was agreed that the goals would have to depend on the availability of minority and women applicants in the civilian labor force to be realistic. The EEOC wanted to use nation-wide labor force statistics, while Sears wanted to create particularized goals for each facility by utilizing labor statistics for the metropolitan area in which each facility was located. Little progress was made after the June 30 meeting.

12. Correspondence between the parties reflects a slightly different picture. It appears that Sears was insisting that the EEOC sever consideration of the 83 individual charges from consideration of the Commissioner's charge while the EEOC refused to participate in "piecemeal" settlement of the various charges against Sears.

13. During the conciliation process, no EEOC representative visited the Montgom-

New York, Philadelphia, San Francisco/Oakland, Seattle/ Everett, and Washington, D.C. These 20 metropolitan areas contained 437 Sears facilities and 158,183 Sears employees. Sears objected to the inclusion of all 437 facilities within the aforementioned areas on the ground that to do so would be "burdensome".

Subsequently, the EEOC agreed to reduce the number of facilities to be examined to the 161, thus reducing the number of included employees to 123,400. The Montgomery retail store involved in this cause was one of the 161 facilities designated for study by the EEOC.

ery Sears store or communicated with employees or management at the store. Investigation of the Montgomery store consisted solely of the statistical data supplied by Sears in 1973 to prepare the final EEOC decision. There was no attempt to conciliate any specific Montgomery problem involved in this suit.

14. On January 24, 1979, Sears filed a class action suit against ten federal agencies, including the EEOC. By letter dated that same day, the EEOC notified Sears that conciliation was terminated. Any summary of the reasons for termination of the conciliation efforts will be somewhat misleading. However, it appears to this Court that, generally, the two basic reasons for failure of the conciliation process were (1) Sears' insistence on review of the accuracy of the EEOC decision juxtaposed against the EEOC's insistence that negotiation focus on the appropriate remedy to be imposed and (2) Sears' insistence on separate negotiation of the 83 "suitable" individual charges following settlement of the EEOC charge juxtaposed against the EEOC's insistence that negotiations focus on nation-wide employment practices of Sears.

15. On October 22, 1979, the EEOC filed this cause against Sears' Montgomery retail store based solely upon the charge filed by Commissioner Brown on August 30, 1973.[7] The complaint alleges that:

"Since at least July 2, 1965, and continuously up until the present time, Sears has intentionally engaged in unlawful employment practices which discriminate against black applicants with respect to hire * * * (which) constitute a pattern and practice of discrimination against black persons."

No particular victim of such practices has ever been named.

## CONCLUSIONS OF LAW

This is a class action suit[8] under Title VII of the Civil Rights Act of 1964 brought by the EEOC to challenge an alleged pattern or practice of hiring discrimination against blacks at a Sears retail store in Montgomery, Alabama.[9] Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 451, 1343 and 1345.

Frequently in suits brought by the EEOC, one issue is whether some or all of the statutory procedures set out in 2000e–5 are jurisdictional or mandatory prerequisites to civil suit and whether the EEOC has complied with those, if any, that are jurisdictional.[10] Those statutory procedures ar-

7. The EEOC has conceded, in brief, that the Brown charge is the only charge it is relying upon in this suit. On or about October 22, 1979, the EEOC also filed four other civil actions against Sears. In the Northern District of Illinois, the EEOC sued the entire Sears organization for nation-wide sex discrimination. In the Northern District of Georgia, the EEOC sued three facilities for racial discrimination. In the Southern District of New York, the EEOC sued two retail stores for racial and national origin discrimination. In the Western District of Tennessee, the EEOC sued one facility for racial discrimination.

8. See, *EEOC v. D. H. Holmes Co.*, 556 F.2d 787 (5th Cir. 1977), reh. den. 565 F.2d 164 (5th Cir.), cert. den. 436 U.S. 962, 98 S.Ct. 3082, 57 L.Ed.2d 1129 (1978); *General Tele. Co. of the Northwest v. EEOC*, —— U.S. ——, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Also, see Note 7, supra.

9. The EEOC is granted the authority to file "pattern or practice" suits against private employers by 42 U.S.C. § 2000e–6(e), which pro-

vides: "Subsequent to March 24, 1972, the Commission shall have authority to investigate and act on a charge of a pattern or practice of discrimination whether filed by or on behalf of a person claiming to be aggrieved or by a member of the Commission. All such actions shall be conducted in accordance with the procedures set forth in section 2000e–5 of this title." According to at least one treatise, this section "(c)learly envisions that prior to a pattern or practice suit there must be an individual or commissioner's charge and that all of the § 706 (2000e–5) prerequisites to suit must be complied with." B. Schlei & P. Grossman, EMPLOYMENT DISCRIMINATION LAW, 1022 (1976) [hereinafter referred to as Employment Discrimination Law].

10. EMPLOYMENT DISCRIMINATION LAW, supra Note 9, at 1013. The Commissioner's charge was filed pursuant to § 706 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(a) and (b) [1976]. Section 706 provides, *inter alia*:

"(a) The Commission is empowered as hereinafter provided, to prevent any person from

guably applicable to this suit include (1) a timely charge verified by a Commissioner; (2) service of notice of the charge on the respondent within ten days of the issuance of the charge; (3) EEOC investigation of the charge: (4) a determination of reasonable cause by the EEOC; (5) an unsuccessful attempt to conciliate the charge with the respondent; and (6) written notice that conciliation has failed and suit will be filed.[11] *Id.*

Generally, Sears contends that the EEOC's claims against its Montgomery store should be dismissed for failure to satisfy certain of the prerequisites mentioned above. First, Sears claims that the charge filed by Commissioner Brown was not properly signed and verified while Brown was still a Commissioner of the EEOC. Second, Sears contends that the actions taken by the EEOC in the past six years included several instances of misconduct amounting to "bad faith" on the part of the EEOC. Third, Sears contends that the EEOC failed to conciliate charges involving the Montgomery Sears store. Fourth, Sears contends that the charge filed by Commissioner Brown was not filed

within 180 days of an unlawful employment practice at the Montgomery Sears store. As the law pertaining thereto is by no means settled, the Court will consider all four allegedly applicable procedural defects. These four basic grounds will be addressed in order.

I.

A charge filed by the EEOC against a private employer "shall be in writing under oath or affirmation * * *." 42 U.S.C. § 2000e–5(b). The United States District Court for the Northern District of Georgia has reasoned in a companion case that Commissioner Brown's term had expired when he verified the EEOC charge on September 11, 1973. *EEOC v. Sears, Roebuck & Co.,* Civil Action 79–1957A, at 2–6 (N.D.Ga., March 13, 1980) [hereinafter referred to as Sears-Georgia]. See Note 7, supra. Generally, the district court held that Congress was "in session" during the summer recess; that the President's nomination of a successor to Brown was not made until after August 30, 1973, and that, therefore, Commissioner Brown's term had expired when

---

engaging in any unlawful employment practice * * *.

"(b) Whenever a charge is filed * * * by a member of the Commission, alleging that an employer * * * has engaged is an unlawful employment practice, the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer * * * [hereinafter referred to as the 'respondent' [within ten days, and shall make investigation thereof. Charges shall be in writing under oath or affirmation * * *.

"* * *

"(e) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred * * *.

"* * *

"(f)(1) If within thirty days after a charge is filed with the Commission . . ., the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent * * * named in the charge." *Id.* (Subsections 706(c) and (d) are not applicable to the case at bar).

There seems to be a certain amount of confusion over whether the statutory prerequisites contained in § 2000e–5 should be referred to as "jurisdictional". In *McArthur v. Southern Airways, Inc.,* 569 F.2d 276 (5th Cir. 1978), the en banc Court held that the 180-day period mentioned in (e) above was "jurisdictional". However, in *Chappell v. Emco Machine Works Co.,* 601 F.2d 1295 (5th Cir. 1979), a panel held the same "jurisdictional" requirement to be subject to equitable tolling. For a general discussion of the characterization problem, see *Coke v. General Adjustment Bureau,* 616 F.2d 785 (5th Cir., 1980). This Court will attempt to avoid characterizing the § 2000e–5 requirements as "jurisdictional", although it appears that, to refer to them as such or as quasi-jurisdictional requirements, would not be error.

**11.** See Note 10, supra. Filing of the civil suit within 180 days of the filing of the charge is a prerequisite only to the filing of a civil suit by a private party. The 180-day requirement does not limit the time suit can be brought by the EEOC. *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). See Part IV, infra.

he "verified" the charge against Sears on September 11, 1973.[12] See Note 5, supra.

Nevertheless, the district court went on to hold that, although the EEOC charge was technically defective, Commissioner Brown was a *de facto* officer of the EEOC on September 11, 1973, with the authority to verify an EEOC charge. *Sears-Georgia,* supra, at 6–9. The Court distinguished *EEOC v. Appalachian Power Co.,* 568 F.2d 354 (4th Cir. 1978), which affirmed the dismissal of an unverified EEOC charge on the ground that, in *Appalachian Power,* the EEOC had not seriously attempted to convince the *Appalachian Power* Court that a defective affidavit could be cured by amendment and that the EEOC had since rejected two of the charges brought by the Commissioner who originally signed the charge. *Sears-Georgia,* supra, at 8–9. The Court in *Sears-Georgia* stated:

"We see no reason in this case to deny the Commission the right to cure a defect in the charge through amendment twelve days after the original filing simply because it is an agency of the government. The focus of our inquiry should not be whether the EEOC perfectly complied with the required procedures, but rather whether the defendant was prejudiced by the twelve-day delay.

" * * *

"Sears alleges no prejudice whatsoever arising from the late verification. There is no reason to believe 'that Congress intended to prevent the Commission from suing because of an unintentional defect in compliance [with statutory procedures], without a showing that such "noncompliance" has caused prejudice to the defendant-employer.' *EEOC v. Airguide Corp.,* 539 F.2d 1038 (5th Cir. 1976)." *Sears-Georgia,* supra, at 9.

■ This Court is troubled by the failure of the EEOC to comply with the statutory prerequisites for bringing suit against private employers.[13] However, this Court is of the opinion that the verification requirement can be cured by amendment, even after the term of the Commissioner has expired, if the respondent [employer-defendant] is not prejudiced thereby. *Id.; EEOC v. Airguide Corp.,* 539 F.2d 1038, 1042 (5th Cir. 1976); *Weeks v. Southern Bell Telephone & Telegraph Co.,* 408 F.2d 228, 230 (5th Cir. 1969). The United States Court of Appeals for the Fifth Circuit has stated:

12. The Court stated: "The holdover term was clearly intended to expire when either the President fails to nominate a successor within sixty days, or the Senate fails to act on a nomination before adjourning *sine die* at the end of a session. * * * Because the President failed [to submit the nomination of Brown's successor to the Secretary of the Senate authorized to receive messages from the President], the sixty-day period was not tolled by the submission of a nomination, and Chairman Brown's tenure expired on August 30, 1973." *Sears-Georgia,* supra, at 6.

13. "Conscientious adherence to the statutory prerequisites is more than an exaltation of form over substance. The language of the statute insures that trifles do not become subjects of EEOC suits and that employers are not harassed by an overzealous EEOC staff." *EEOC v. Brookhaven Bank & Trust Co.,* 614 F.2d 1022, 1026 (5th Cir., 1980) [Reavley, J., dissenting]. A similar but much stronger reaction was noted by the district court in *EEOC v. Western Electric Co.,* 382 F.Supp. 787 (D.Md.1974), wherein the Court stated:

"As a final comment, the Court is disturbed by the Commission's attitude that most of the issues raised herein are purely technical objections. It holds that its well-meaning goal of eliminating employment discrimination justifies the breach of any procedural rules or regulations. This Court cannot agree. The elimination of crime is also a desirable goal considering the human waste it visits. Yet, a court could not dismiss the failure to advise an accused of his constitutional rights as a mere technicality. So, too, in this case where serious charges of discrimination have been made, the defendant cannot be stripped of all rights.

"The events of the past year, indeed of the past month, [a reference to Watergate] have taught us the meaning of that phrase 'ours is a government of laws not of men.' The Government expects its citizens to obey the law, and when they do not, it asks for an accounting. How strange it is that when a government official or agency breaches a statute or regulation, it is casually dismissed as a mere technicality. A government which does not respect the law certainly cannot expect its citizens to do so. No one is above the law including the EEOC." *Id.,* at 801.

"[W]hile we think it is clear that the purpose of certain of the procedural requirements of Section 2000e–5 is to protect employers from unfounded charges and harassment, it is equally clear that the employer here was in no way bothered or prejudiced by the unsworn charge and that the employer did receive the protection envisaged by Congress." 408 F.2d at 231.

Unlike the Court in *Sears-Georgia*, however, this Court finds that Sears has been prejudiced by the failure to verify the charge while Brown was Commissioner of EEOC. In the September 11, 1973, verification, Brown swore, in effect, that he had reasonable cause to believe, *inter alia*, that every Sears facility in the United States was engaged in patterns or practices of discrimination on the bases of race, sex and national origin in hiring, payment of wages, job classification, discharge, promotion, training, conditions of employment, layoff, seniority, advertising, testing and "maternity recruitment". Sears was, thereby, put to the expense and effort of investigating and preparing to defend against all those general charges at each facility. Some six years later, that all-encompassing charge has resulted in a suit charging the Montgomery Sears store with hiring discrimination against blacks. This Court can think of no better example of a situation where the requirement of verification should be more vigorously adhered to in order to prevent the EEOC from issuing across-the-board, catchall pattern or practice charges against nation-wide employers only to turn around and bring suit against one particular facility on limited bases and issues of discrimination.

Sears has been deprived of its statutory protection that, in the absence of a charge being filed by an employee, only a Commissioner of the EEOC will have the authority to file a charge against it and that the Commissioner will do so only under solemn oath. This Court is of the opinion that, the more vague and expansive a charge filed by the EEOC is, the more strictly this Court should require the EEOC to comply with the clear wording of the statute which requires such charges to be verified by a Commissioner of the EEOC.[14] While this Court realizes that the weight of authority indicates that not all of the requirements in § 2000e–5 are mandatory, nonetheless prejudice should be presumed and compliance required when the EEOC fails to comply with a procedural step and such failure results in the very abuse that Congress intended to prevent by including that step. Under such circumstances, this Court can "see no reason to ignore the plain language that Congress has enacted." *EEOC v. Appalachian Power Co.*, supra, at 355.[15] For the foregoing reasons, this Court finds that the complaint against the Montgomery Sears store should be dismissed without prejudice for failure to comply with the applicable procedural requirement that the EEOC charge be verified by a Commissioner of the EEOC.

## II.

■ This Court is impressed with Sears' contention that the EEOC has engaged in a pattern of misconduct over the past six

---

**14.** While the EEOC may contend that it must issue broad charges in order to avoid being limited to suit only on the basis of discrimination charged when investigation reveals discrimination on another basis, this Court would point out that the Fifth Circuit Court of Appeals has held that the scope of a suit brought under Title VII is not limited to the basis of discrimination alleged in the charge. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970). See, also, *EEOC v. General Electric Co.*, 532 F.2d 359 (4th Cir. 1976). A subsequent case has held that the EEOC may investigate any charge which can reasonably be expected to grow out of an original charge of discrimination. *EEOC v. Brookhaven Bank & Trust Co.*, 614 F.2d 1022 (5th Cir. 1980). Therefore, the EEOC can offer this Court no justification for a "shotgun" approach to charges filed by the EEOC.

**15.** See Note 13, supra. See, also, *Patterson v. American Tobacco Co.*, 535 F.2d 257, 271–72 (4th Cir.), cert. den., 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976). See, also, *EEOC v. Container Corp. of America*, 352 F.Supp. 262 (M.D.Fla.1972); *EEOC v. E.I. duPont de Nemours & Co.*, 373 F.Supp. 1321 (D.Del.1974), affm'd., 516 F.2d 1297 (3rd Cir. 1975).

years which amounts to a display of general "bad faith" on behalf of the EEOC sufficient to warrant dismissal of this cause. This Court has commented to counsel about EEOC's having filed suit in several jurisdictions with the possible intent of seeking consolidation in a court where a favorable judge has been assigned the case. However, there are factual disputes as to the actions and intent of the parties during the conciliation process. Additionally, the United States Court of Appeals for the Fifth Circuit has recently ruled that EEOC harassment, even though reprehensible, is insufficient as a matter of law to state an affirmative defense to a Title VII action. *EEOC v. First National Bank of Jackson*, 614 F.2d 1004, 1008 (5th Cir. 1980). Therefore, this Court is of the opinion that summary judgment on the ground that the EEOC engaged in misconduct to harass Sears would be inappropriate. *Id.* See, also, *Sears-Georgia*, supra, at 9–20.

### III.

With regard to the issue of whether the EEOC complied with the statutory prerequisite of notice, investigation and conciliation, the parties seem to agree that, during the conciliation process, negotiations never focused on particular facilities and that, therefore, the hiring practices of the Montgomery Sears store were never discussed between the parties. Sears contends that (1) it had no specific notice that the EEOC would single the Montgomery store out as the subject of a civil suit until on or about the time suit was filed, (2) that there was no meaningful investigation of the Montgomery store's hiring practices, and (3) that there was absolutely no conciliation of the EEOC's claims involving the Montgomery store. Sears contends that notice, investi-

gation, and conciliation are mandatory statutory prerequisites to civil action and that the failure to comply with any of them requires dismissal of this cause.

The EEOC contends that Sears was, or should have been, put on notice of possible suit against its Montgomery store because that store was one of the 161 sample facilities selected for statistical analysis [16] and that the Montgomery metropolitan area was listed in a table of statistics in the EEOC decision as an example of a metropolitan area where a disparate number of black applicants for employment were rejected.

Even assuming that all of the aforementioned three steps are statutory prerequisites to suit,[17] the crucial preliminary question facing this Court is whether by giving notice to Sears' headquarters in Chicago of the charge, investigating Sears' nation-wide employment practices, and conducting conciliation negotiations with an eye only upon a nation-wide settlement, the EEOC can be considered to have satisfied said prerequisites with regard to suit against Sears based solely on the Montgomery Sears retail store. There is no question that the Montgomery Sears store is owned and operated by Sears, a public corporation doing business in the State of Alabama, and that the Montgomery store is one of approximately 3,000 Sears facilities throughout the United States. Also, it is clear that the issue here is not the same as that when the EEOC or an aggrieved employee files suit against an employer not named as the respondent in the charge filed with or by the EEOC. Sears was the respondent named in the Commissioner's charge. Sears was given notice of the charge, and Sears was a participant in the conciliation negotiations.[18]

---

16. See Note 6, supra.

17. The law in the Fifth Circuit appears to be that the failure of the EEOC to comply with statutory prerequisites will *not* require dismissal when (1) the EEOC made "every attempt to comply with the conditions precedent to suit required under Section 2000e–5" and (2) the technical defect "inflicts no significant injury on the party entitled to observance of the rule." *EEOC v. Airguide*, supra, 539 F.2d at 1042,

quoting in part from *EEOC v. Kimberly-Clark Corp.*, 511 F.2d 1352, 1360 (6th Cir. 1975). The defect in *Airguide* was the failure to give notice of the charge to the respondent within ten days. The EEOC claimed that it had mailed notice to the respondent but that the notice had not been delivered.

18. See, Employment Discrimination Law, supra, at 962–72 & 1979 Supp. at 243–46.

■ The District Court in *Sears-Georgia* apparently believed that the question was really one of whether the EEOC evidenced good faith when it proceeded on a nation-wide basis on each of the procedural steps to suit and then chose to litigate in that suit only Sears' hiring practices at three facilities in Georgia. The *Sears-Georgia* Court held that the EEOC did not evidence "bad faith" and stated:

> "[W]e do not think it imperative that the EEOC attempt to conciliate each and every charge of discrimination involving the Sears facilities that are the subject of this suit. As we noted in prior proceedings involving these same parties, it was the intent of Congress in creating the negotiation and settlement scheme that the EEOC try to win compliance with Title VII requirements 'with respect to *all* employees of a given company' rather to rely on a piecemeal approach. *Sears, Roebuck & Co. v. EEOC*, 581 F.2d 941, at 946 (D.C.Cir.). Therefore, we do not think that the EEOC's broad-based approach to achieving nationwide changes in defendant's employment practices contravened its obligations under the statute to conciliate charges." *Sears-Georgia*, supra, at 21–22.

This Court questions the opinion of the Court in *Sears-Georgia* that it was properly within the intent of Congress as evidenced by Title VII for the EEOC to limit conciliation by use of an "all-or-nothing" approach.[19] Even if it were proper to so generalize conciliation in order to obtain broad nation-wide relief, it does not follow that, once a nation-wide charge is filed and investigation and conciliation are conducted on a nation-wide basis, the EEOC can bring a civil action against Sears limited solely to alleged employment discrimination committed by its Montgomery retail store. While the actions of the EEOC taken to notify Sears of the charge and to investigate and conciliate the charge may have been sufficient to establish the predicate for a suit against Sears based on alleged nation-wide patterns or practices of employment discrimination, such as the suit in Chicago, this Court cannot agree that such actions also establish a predicate for the EEOC to bring separate civil actions against Sears in district courts across the country based on nonparticularized practices of any one or all of its 3,000 facilities. Title VII itself distinguishes between large and small employers by excluding from coverage certain small employers.[20] Otherwise, Title VII does not distinguish between nation-wide employers of thousands at hundreds of different locations and local employers of dozens at a handful of locations. Although no statutory distinction is made, there is a point where EEOC procedures that would be permissible when utilized in connection with charges against a nation-wide employer would not be permissible when utilized against a local employer. To charge a local employer of 30 at two locations with a "pattern and practice" of discrimination at both locations and then to bring suit only on the practices utilized at one of the locations is not as objectionable as charging Sears with a nation-wide practice of discrimination on a variety of bases and then bringing suit only against one of its 3,000 facilities. In other words, at some point an EEOC charge, notice, investigation and conciliation attempt can become so broad that, in relation to any particular location of discrimination, the charge, investigation and conciliation will be so obscure so that it will not be sufficient to support a civil action based solely on particular discrimination occurring at any one particular location. This Court is of the opinion that this is the situation *sub judice*.

This Court need look no further than the conciliation issue to support such a finding.

---

**19.** See, e. g., *EEOC v. Pet, Inc.*, 612 F.2d 1001 (5th Cir. 1980), where the Court stated "an all-or-nothing approach on the part of the commission, one of whose most essential functions is to attempt conciliation, will not do." *Id.*, at 1002. The Court went on to hold, however, that dismissal would be too harsh a penalty when conciliation was attempted in good faith.

**20.** For the purposes of Title VII, "employer" is defined to mean a "person" engaged in an industry affecting commerce with 15 or more employees for each day of at least 20 weeks in the past or current year, or any agent of that "person". 42 U.S.C. § 2000e(b). A "person" is defined as including "corporations". 42 U.S.C. § 2000e(a).

The applicable portion of 42 U.S.C. § 2000e–5(b) provides:

> "If the Commission determines after * * * investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion."

Subsection 2000e–5(f)(1) provides, *inter alia*:

> "If * * * the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent * * * named in the charge."[21]

Several cases have held that the failure of the EEOC to conciliate a charge is not a bar to an individual employee's claim against a respondent on the theory that the individual should not be prejudiced by the EEOC's sloth or indifference. *Miller v. International Paper Co.*, 408 F.2d 283, 291 (5th Cir. 1969). See, also, *Hubbard v. Rubbermaid, Inc.*, 436 F.Supp. 1184 (D.Md.1977); *McAdams v. Thermal Indus., Inc.*, 428 F.Supp. 156 (W.D.Pa.1977). Cf. *Jones v. Bell Helicopter*, 614 F.2d 1389 (5th Cir. 1980). The Fifth Circuit Court of Appeals has made it clear, however, that such a rule does not apply when the EEOC brings suit.

> "Although we have held that 'an effort to conciliate by the EEOC is not in any sense a condition precedent to the *charging party's* right to seek judicial consideration of his grievance,' * * * [w]e have never held, or even suggested, that the EEOC is excused from its statutory duty to conciliate when *it* seeks the assistance of the courts in order to enforce the mandates of Title VII on behalf of specified aggrieved parties, pursuant ·to § 706. The reported cases . . . are to the contrary. . . . One court has even indicated that the Commission may

have similar responsibilities in connection with 'pattern or practice' suits brought ˈunder § 707 subsequent to the effective dates of the 1972 amendments. *United States v. Masonry Contractors Assn.*, 6 Cir. 1974, 497 F.2d 871, 875–76 (dicta)." *United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826, 869 (5th Cir. 1975) [emphasis in original].

In fact, the weight of authority seems to be that the total failure to conciliate is a bar to suit by the EEOC. See, e. g., *Patterson v. American Tobacco Co.*, supra; *EEOC v. North Central Airlines*, 475 F.Supp. 667 (D.Minn.1979); *EEOC v. Humko Products Division of Kraftco Corp.*, 402 F.Supp. 1076 (W.D.Tenn.1975); *EEOC v. United States Pipe & Foundry Co.*, 375 F.Supp. 237 (N.D. Ala.1974); *EEOC v. Container Corp. of America*, supra.

The Fifth Circuit Court of Appeals has left open the question of whether conciliation is a condition precedent to an EEOC pattern or practice suit, *United States v. Allegheny-Ludlum Industries*, supra, at 869, and the distinction between an EEOC pattern or practice suit and an EEOC suit based on a charge filed by an individual may have some significance in other areas. See, e. g., Text Part IV, infra. However, if any distinction is to be made concerning the requirement of conciliation, the EEOC's statutory duty to conciliate should be applied more strictly when the EEOC is proceeding solely on its own initiative, as it is in this cause. No individual's rights will be barred by dismissing a suit by EEOC. The dismissal would demonstrate that even government agents are bound by the law. Therefore, this Court finds that an attempt to conciliate is a condition precedent to an EEOC pattern or practice suit in this suit.

Unlike many of the cases cited above, in this cause some conciliation efforts did take place between the EEOC and Sears. How-

---

21. These statutes, and the regulations promulgated thereunder, contemplate that the sequence of administrative procedures prior to the filing of a civil action run as follows: (1) a charge is filed; (2) notice of the charge is sent by the EEOC to the respondent named in the charge; (3) investigation of the charge is conducted by the EEOC; (4) predetermination settlement negotiations are attempted; (5) a finding of reasonable cause is made by the EEOC; (6) conciliation is attempted; (7) the EEOC determines that conciliation has failed; and (8) notice of the failure of conciliation is sent to the respondent. *See,* 29 CFR § 1601 (1979).

ever, the subject of those conciliation efforts did not concern the hiring practices of the Montgomery store or, for that matter, the employment practices of any particular Sears facility. Several courts have held that, as long as some attempt to conciliate is made, the EEOC has satisfied its statutory condition precedent to suit. See, *EEOC v. Zia Co.*, 582 F.2d 527 (10th Cir. 1978); *EEOC v. North Central Airlines*, supra. Assuming that to be the law, the question before this Court is: What must the EEOC attempt to conciliate in order to satisfy that statutory prerequisite to a civil suit?

In *EEOC v. Sherwood Medical Indus., Inc.*, 452 F.Supp. 678 (M.D.Fla.1978), the District Court addressed that question under similar circumstances. In that case, suit was filed by the EEOC based on an individual's race discrimination charge after conciliation of the race discrimination claim had failed. However, when suit was filed, the EEOC included claims for sex discrimination against the employer although the issue of sex discrimination had not been conciliated. The EEOC contended that the sex discrimination claim should not be dismissed because it is required only to conciliate the original charge of discrimination to satisfy the statutory condition precedent to civil suit. The District Court rejected such an interpretation of the EEOC's statutory duty to conciliate. The Court stated:

> "This contention, if accepted, would run contrary to Congressional intent and could well have the affect of rendering the conciliation requirement an empty formality. The mandate that conciliation be attempted is unique to Title VII and it clearly reflects a strong Congressional desire for out-of-court settlement of Title VII violations. . . . The legislative history of the 1972 amendments confirms that Congress viewed judicial relief as a recourse of last resort, sought only after a settlement has been attempted and failed. Conciliation is clearly the heart of the Title VII administrative process. In light of the clear Congressional preference for conciliation it would be anomalous to conclude that the Commission is under no obligation to conciliate a claim of discrimination simply because it origi-

nated during the course of its investigation rather than from an aggrieved person's charge.

> " . . .

> "The only construction of the statute which is at all in harmony with the Congressional desire for conciliation is that the Commission's authority to sue is conditioned upon full compliance with the administrative process—investigation, determination, and conciliation—with respect to each discriminatory practice alleged. 'Congress, committed as it was to voluntary compliance, could not have intended that the Commission could attempt conciliation on one set of issues and, having failed, litigate on a different set.' *EEOC v. E. I. duPont deNemours and Company*, supra * * *. Once having determined that a respondent has violated Title VII the Commission must make a genuine effort to conciliate with respect to each and every employment practice complained of. In this way, the respondent is afforded a fair opportunity to weigh all the factors which must be taken into account in deciding whether to settle a dispute out of court, even if the charge of discrimination in dispute arose from the Commission's own investigation rather than the charging party's charge. And if litigation then results, all parties are assured that they have had a fair opportunity to settle every matter in dispute. The Congressional mandate that litigation be a matter of last resort will have been observed." 452 F.Supp. at 683–84.

Although in *EEOC v. Sherwood Medical* the District Court was dealing with a situation where the EEOC had brought a civil suit including a claim that had not been mentioned in the charge or conciliated, this Court is of the opinion that the basic reasoning utilized by that Court is persuasive under the circumstances of this cause. The question is really whether the EEOC has attempted to conciliate the issues which form the subject of this civil action. While the EEOC may argue that its "shotgun" charge and the "all-or-nothing" conciliation effort would cover any lesser issue at any

Sears facility, this Court is of the opinion that this is a situation where the EEOC's conciliation efforts were so broad in scope that, as a practical matter, they cannot be considered to have included conciliation of the issues which form the subject of this civil action because, as a matter of fact, they did not. Dismissal for failure to conciliate the relevant issue would, therefore, seem to be in order. See, *EEOC v. International Brotherhood of Electrical Workers*, 476 F.Supp. 341 (D.Mass.1979).

Certain previously-mentioned Fifth Circuit Court of Appeals opinions appear to require that, before a Title VII suit is dismissed for failure to satisfy statutory prerequisites to suit, the court should determine that the failure was not inadvertent or that the failure resulted in prejudice to the defendant. See Note 17, supra. In this case, the decision to conciliate only on a nation-wide scope was made by the EEOC despite the objection of Sears. Therefore, this Court is of the opinion that the EEOC purposefully bypassed conciliation of the claim sued upon in this cause and that, even absent a showing of prejudice by Sears, this cause should be dismissed without prejudice for failing to conciliate said claims.

■ The EEOC contends that, even if it is found to have failed to conciliate the charges sued upon in this cause, this Court should enter a stay of proceedings pursuant to 42 U.S.C. § 2000e–5(f)(1).[22] The District Court in *EEOC v. United States Pipe & Foundry Co.*, supra, rejected a similar plea by the EEOC to stay proceedings in order for the EEOC to correct its previous failure to conciliate with one of the employers made a defendant in that civil action. 375 F.Supp. at 245–46. That Court ruled that the discretion to stay proceedings would only apply when the EEOC had attempted conciliation and failed and that it would not attach where the Court lacked jurisdiction

to hear the civil action due to a total failure to attempt any conciliation of the charges sued upon. *Id.*, at 245. While this Court expresses no opinion on the question of whether the duty to attempt conciliation is "jurisdictional", the reasoning of the District Court in *EEOC v. United States Pipe & Foundry* is persuasive even if the conciliation requirement is considered to be a nonjurisdictional condition precedent to civil suit. This Court shares the opinion that a total failure to conciliate the issues sued upon cannot be cured after civil suit is brought by the stay provision of § 2000e–5(f)(1). Even if it could, this Court would not choose to exercise its discretion to stay these proceedings under the circumstances of this cause.

■ The EEOC further contends in the alternative that, if this Court finds that this cause should be dismissed for failure to attempt to conciliate the claims sued upon, then such dismissal should be without prejudice. Since this is a dismissal for lack of jurisdiction, it is not a dismissal on the merits and should be without prejudice. Cf. *Truvillion v. King's Daughters Hospital*, 614 F.2d 520, 522 (5th Cir. 1980). See generally, *Costello v. United States*, 365 U.S. 265, 284–88, 81 S.Ct. 534, 544–546, 5 L.Ed.2d 551 (1961). Therefore, as an alternative ruling, this Court would dismiss this cause without prejudice for failure to attempt conciliation of the claims sued upon.[23]

## IV.

The fourth ground for dismissal raised by Sears was apparently not raised in the *Sears-Georgia* case. In this cause, Sears contends that, even if Commissioner Brown's charge was valid as meeting the verification requirement, it was, nevertheless, invalid as not being filed within 180

---

**22.** The applicable portion of that subsection provides that: "Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending the termination of * * * further efforts of the Commission to obtain voluntary compliance."

**23.** This Court does not herein find that the EEOC failed to conciliate its nation-wide claims

against Sears in "good faith" and expresses no opinion on that question or on the questions of whether Sears received adequate notice that suit would be brought against the Montgomery store or whether the EEOC conducted an adequate investigation of the claims sued upon in this cause.

days of an unlawful employment practice occurring at the Montgomery retail store. In support of that contention, Sears has submitted statistical evidence that establishes that, during the applicable 180-day period—March–August, 1973—the percentage of blacks hired at the Montgomery store exceeded the percentage of blacks in the civilian labor force. To counter that evidence, the EEOC has submitted statistical evidence which establishes that, during a portion of the applicable period, a greater percentage of white applicants were hired than black applicants. The EEOC contends that such evidence establishes an issue of material fact as to whether an unlawful employment practice occurred within 180 days of the filing of the Commissioner's charge on August 30, 1973.

Both sides seem to presume that the filing of the Commissioner's charge within 180 days of a discriminatory act was a prerequisite to this cause. However, before attempting to resolve the dispute over what statistical evidence controls and since failure to file within 180 days may be a jurisdictional defect, it is prudent for this Court to determine whether the existence of a pattern or practice of disparate treatment within 180 days of the filing of the Commissioner's charge is a prerequisite to a pattern or practices suit brought by the EEOC.

As previously noted, § 2000e–5(e) provides that "a charge under this section shall be filed within [180] days after the alleged unlawful employment practice occurred." Before the 1972 amendment to Title VII, the Attorney General could institute a pattern or practice suit whenever reasonable cause was found to believe a pattern or practice existed. The Attorney General did not have to comply with the procedural requirements set out in § 2000e–5. See, e. g., *United States v. Masonry Contractors Assn. of Memphis*, 497 F.2d 871 (6th Cir. 1974). By amendment, the EEOC was eventually given the authority to bring pattern or practice suits "in accordance with the procedures set forth in section 2000e–5 of this title." 42 U.S.C. § 2000e–6(e). However, not every procedural requirement set forth in § 2000e–5 has been construed to apply to suits brought by the EEOC. In

*Occidental Life Ins. Co. v. EEOC*, supra, Note 11, the Supreme Court held that a suit brought by the EEOC based on the filing of an individual charge by an aggrieved employee did not have to be filed within 180 days of the filing of the individual charge with the EEOC. The Court stated:

"In short, the literal language of § 706(f)(1) [§ 2000e–t(f)(1)] simply cannot support a determination that it imposes a 180-day time limitation on EEOC enforcement suits." 432 U.S. at 361, 97 S.Ct. at 2452.

This Court is not aware of any reported Fifth Circuit Court of Appeals or U.S. Supreme Court decision in which either of those Courts has ruled on whether, as a condition precedent to a pattern or practice civil suit, the EEOC must file a charge within 180 days of the existence of a pattern or practice of discrimination. In dicta in *United States v. Fresno Unified School District*, 592 F.2d 1088 (9th Cir. 1979), the Court stated:

"Not all procedures listed in § 706 [42 U.S.C. § 2000e–5], however, are necessarily relevant in pattern or practice litigation. [Note 5]. Some of the § 706 procedural requirements seem to apply only to individual unlawful employment practices and not to pattern or practice suits. "For example, § 706(e) requires the filing of a charge within 180 days of the alleged unlawful employment practice. Section 707, however, contains no requirement that anyone file a charge. A prima facie pattern or practice suit may be based solely on statistical evidence. *United States v. Iron Workers Local 86*, 443 F.2d 544, 551 (9th Cir. 1971). Further, it takes more than one unlawful practice to constitute a 'pattern or practice' of employment discrimination. . . . Thus there could be no certain date from which the 180-day period would run." *Id.*, at 1096, n. 5.

At least one other Court has indicated that the 180-day limitation provided in § 2000e–5(e) does not apply to pattern or practice suits brought by the EEOC. See, *EEOC v. Continental Oil Co.*, 393 F.Supp. 167

(D.Colo.1975). It might be argued that the 180-day limitation begins to run when the plaintiff learns of the alleged misconduct. However, the continuing nature of a pattern or practice distracts from the logic of such a conclusion. It appears that the date of the last overt act would trigger the limitations period.

■ This Court is of the opinion that the clear language of § 2000e–6(e) makes the "procedures" of § 2000e–5 applicable to pattern or practice suits and that the 180-day period set out in § 2000e–5(e) is one of those procedures. In *Occidental Life*, supra, the Supreme Court determined that the legislative history of § 2000e–5(f)(1):

" * * * demonstrates that the provision was intended to mean exactly what it seems to say: An aggrieved person unwilling to await the conclusion of extended EEOC proceedings may institute a private lawsuit 180 days after a charge has been filed. The subsection imposes no limitation upon the power of the EEOC to file suit in a federal court." 432 U.S. at 366, 97 S.Ct. at 2454.

The *Occidental* Court apparently distinguished the 180-day period incorporated in § 2000e–5(f)(1) from the 180-day period of § 2000e–5(e). The Court implied in dicta that, unlike the 180-day period of § 2000e–5(f)(1), the 180-day period of § 2000e–5(e) is intended to be a limitations period. In that case, 432 U.S. at 371–72, 97 S.Ct. at 2457, the Court went on to state:

"Congress did express concern for the need of time limitations in the fair operation of the Act, but that concern was directed entirely to the initial filing of a charge with the EEOC and prompt notification thereafter to the alleged violator. The bills passed in both the House and the Senate contained short time periods within which charges were to be filed with the EEOC and notice given to the employer. And the debates and reports

in both Houses made evident that the statute of limitations problem was perceived in terms of these provisions, rather than in terms of a later limitation on the EEOC's power to sue. That perception was reflected in the final version of the 1972 Act, which requires that a charge must be filed with the EEOC within 180 days of the alleged violation of Title VII * * *.

"The fact that the only statute of limitations discussions in Congress were directed to the period preceding the filing of an initial charge is wholly consistent with the Act's overall enforcement structure—a sequential series of steps beginning with the filing of a charge with the EEOC. Within this procedural framework, the benchmark, for purposes of a statute of limitations, is not the last phase of the multistage scheme, but the commencement of the proceeding before the administrative body."

While this Court is mindful of the fact that the Court possibly had in mind only a limitations period for charges filed by individuals,[24] the message is clear that in *Occidental Life* the majority of the Court in dicta recognized the congressional intent that § 2000e–5(e) is an example of a statute of limitations period applicable to suits filed under § 2000e–5. This Court is of the opinion that said period is also applicable to suits initiated by the EEOC and, through § 2000e–6(e), to pattern or practice suits initiated by a Commissioner's charge. Since pattern or practice suits are similar to continuing violation suits brought by private plaintiffs pursuant to Title VII, it would seem logical to apply to pattern or practice suits the same 180-day limitation concepts applied in continuing violation suits. Continuing violation suits are governed by what some call the "continuing violation doctrine" which provides that, where a suit is not limited to isolated inci-

---

24. Justice Rehnquist, in his dissenting opinion, noted: "While the 1972 amendments allow members of the EEOC to file charges, . . . this is not the normal method of initiating suit. . . . Since this case does not involve the situation where the complaining individual is not the allegedly aggrieved party, I do not need

to deal with the question of whether a different result would follow when the EEOC brings suit upon a complaint initiated by one of its members." 432 U.S. at 384, n. 6, 97 S.Ct. at 2463, n. 6 (Rehnquist, J., dissenting in part) [citations omitted].

dents but consists of a series of practices or overt acts that extend within 180 days of the filing of the charge, filing of the charge is considered to be timely. See, e. g., *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429 (D.C.Cir.1976), cert. den. 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). A continuing violation suit is barred when the series of practices has ended and the last act of discrimination occurred more than 180 days before the charge was filed. See, *Acha v. Beame*, 570 F.2d 57 (2nd Cir. 1978). Accordingly, the issue in this cause becomes whether there exists a material issue of fact as to the existence of a pattern or practice of employment discrimination at any time during the 180 days prior to the filing of the Commissioner's charge against Sears on August 30, 1973.

This Court is of the opinion that Sears has failed to establish that, as a matter of law, no pattern or practice of hiring discrimination against blacks existed at the Montgomery store during the 180 days prior to the filing of the charge. The EEOC does not dispute that, during the entire 180-day period, blacks were hired at the Montgomery store in a percentage well in excess of the percentage of blacks in the available labor force. In order to rebut Sears' statistics, the EEOC relies on statistics which show that, during a portion of the applicable 180-day period, a greater percentage of whites who filled out applications were hired.

The basis of the EEOC's suit is disparate treatment of blacks. The ultimate issue is whether the Montgomery store treated blacks less favorably than others because of their race. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). It has been recognized that direct evidence of such discrimination is so hard to uncover that courts have been allowed to use statistical evidence to create an inference of discrimination. Employment Discrimination Law, supra at 16. The EEOC has directed this Court's attention to *Hester v. Southern Railway*, 497 F.2d 1374 (5th Cir. 1974), wherein the Court stated:

"The most direct route to proof of racial discrimination in hiring is proof of disparity between the percentage of blacks among those applying for a particular position and the percentage of blacks among those hired for the position." *Id.*, at 1379.[25]

In applying such a rule, this Court would first note that the EEOC has not claimed that the Montgomery store has discriminated with regard to any particular position but has claimed that the overall hiring practices of the store are discriminatory. Also, the EEOC has, in argument and brief, urged that this Court compare the disparity between the percentage of black applicants hired and the percentage of white applicants hired.[26] This is not the same thing as comparing the disparity between the percentage of applicants who are black and the percentage of applicants hired who are black. In this cause, during May through October, 1973, which includes a portion of the 180-day period preceding the filing of the Commissioner's charge on August 30, 1973, blacks constituted approximately 46.7% of the total number of persons submitting applications and 35.9% of the total number of persons hired. During this period, it is agreed that blacks constituted between 27.9% and 30% of the civilian labor force in the Montgomery area and between 20% and 22% of the total number of employees at the Montgomery store.

In short, Sears urges this Court to apply the "Population/work force" formula while the EEOC urges this Court to apply the "applicant flow" formula albeit in an incor-

---

25. This route to proof could lead to poor results where the defendant already employs a larger percentage of blacks than exists in the available work force.

26. See, Note 1, supra. In brief, the EEOC states: "[W]e believe it appropriate to note that * * * during the one-year period from May of 1973 through April of 1974, 8.6% (94 of 1085) of black applicants were hired compared to 23.4% (189 of 806) of white applicants. At least as to the hiring issue, a factual dispute exists." Plaintiff's Memorandum In Opposition to Defendant's Motion to Dismiss, at 1, n. 1. Two-thirds of the time span referred to by the EEOC above falls outside of the 180-day period applicable to this cause.

rect manner. See, generally Employment Discrimination Law, supra, at 1161–76. *Hester v. Southern Railway*, supra, evidences a preference for the "applicant flow" formula. See, also, *NAACP v. City of Corinth*, 83 F.R.D. 46, 60–62 (N.D.Miss. 1979). However, in *Robinson v. Union Carbide Corp.*, 538 F.2d 652 (5th Cir. 1976), cert. den. 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 78 (1977), the Court affirmed a district court's use of the "population/work force" formula when suspicion was cast on the reliability of the "applicant flow" formula by evidence that many applications were submitted by the same persons. *Id.*, at 657–59. There is no such evidence currently before this Court.

It appears to this Court that, to continue with this analysis, would force this Court to weigh the probative value of the undisputed statistical evidence submitted by Sears and the EEOC. It is inappropriate for this Court to weigh the probative value of the evidence on motion for summary judgment. See, *Higgenbotham v. Ochsner Foundation Hospital*, 607 F.2d 653 (5th Cir. 1979); *Hayden v. First National Bank of Mt. Pleasant, Tex.*, 595 F.2d 994 (5th Cir. 1979). Accordingly, when viewing all evidence most favorably for the EEOC, this Court is of the opinion that there exists a material issue of fact as to whether the Montgomery Sears store engaged in an unlawful employment practice during the 180 days prior to the filing of the Commissioner's charge and that, therefore, it would be inappropriate for this Court to dismiss the complaint on the ground that this claim is barred by failure to comply with § 2000e–5(e).

### V.

To summarize, this Court will dismiss this cause without prejudice on two alternative grounds. This Court is of the opinion that, of the several procedural requirements listed in § 2000e–5, the EEOC has failed to satisfy requirements: (1) that a civil suit brought solely on an EEOC charge be verified by a Commissioner of the EEOC and (2) that the EEOC, before filing suit, attempt to conciliate the issues that eventually form the basis of the civil suit. As a result of the EEOC's failure to comply with the above two requirements, this Court will dismiss this cause, without prejudice.